IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA18-542

Filed: 5 February 2019

Lee County, No. 16 CVS 285

THE ESTATE OF WILLIAM BELK, by and through TAQUITTA BELK, ADMINISTRATRIX, Plaintiff,

v.

BOISE CASCADE WOOD PRODUCTS, L.L.C., a member of BOISE CASCADE COMPANY, JOHN DOE 1 and JOHN DOE 2, Defendants.

Appeal by Defendant Boise Cascade Company from order entered 11 December 2017 by Judge David Thomas Lambeth, Jr., in Lee County Superior Court. Heard in the Court of Appeals 13 November 2018.

> *Muller Law Firm, PLLC, by Tara Davidson Muller, and The Hunt Law Firm, by Anita B. Hunt and Ralph A. Hunt, Jr., for Plaintiff-Appellee.*

> *Husch Blackwell, LLP, by William E. Corum, and Teague, Campbell, Dennis & Gorham, LLP, by Jennifer B. Milak, for Defendant-Appellant Boise Cascade Wood Products, L.L.C.*

DILLON, Judge.

Defendant Boise Cascade Company ("Boise Cascade")[1] appeals from the trial court's order denying its motion for summary judgment. Boise Cascade contends that exclusive jurisdiction over this case belongs to the Industrial Commission, because Boise Cascade was a "special employer" of the deceased. After careful review, we reverse.

## I. Background

Boise Cascade is a limited liability company which owns and operates a plywood manufacturing plant in Moncure. Boise Cascade entered into an Agreement for Temporary Services with a staffing company, Aerotek, Inc. ("Aerotek"), to provide temporary personnel for the plant. Pursuant to their Agreement for Temporary Services, Aerotek recruited William Belk as a candidate for a mechanic position in Boise Cascade's maintenance department.

In August 2014, Mr. Belk began working at the Boise Cascade plant. On 26 September 2015, after working at the Boise Cascade plant for more than a year, Mr. Belk was killed in a workplace accident when a machine he was repairing collapsed.

Mr. Belk's estate ("Plaintiff") brought a workers' compensation claim against Aerotek before the Industrial Commission and received an award of death benefits.

---

[1] Pursuant to motion allowed 6 August 2018, Boise Cascade Company has been substituted for Boise Cascade Wood Products, L.L.C., as the defendant in this case. We conform the caption in this opinion to the previous documents in this line.

In April 2016, Plaintiff instituted this civil action against Boise Cascade seeking damages for Mr. Belk's death. Boise Cascade then filed to dismiss, which was denied. Boise Cascade subsequently moved for summary judgment, which, after a hearing on the matter, was also denied.

Boise Cascade appeals.

## II. Appellate Jurisdiction

This appeal is interlocutory. Typically, "[t]he denial of a motion for summary judgment is an interlocutory order and is not appealable." *Harris v. Walden*, 314 N.C. 284, 286, 333 S.E.2d 254, 256 (1985). Nonetheless, "the denial of a motion concerning the exclusivity provision of the Workers' Compensation Act affects a substantial right and thus is immediately appealable." *Fagundes v. Ammons Dev. Grp., Inc.*, ___ N.C. App. ___, ___, 796 S.E.2d 529, 532 (2017). Therefore, we conclude that the appeal is timely.

Plaintiff, though, argues that Boise Cascade has not properly appealed from the correct judgment. N.C. R. App. P. 3(d) ("The notice of appeal required to be filed . . . shall designate the judgment or order from which appeal is taken[.]"). Boise Cascade's notice of appeal cites to the order denying summary judgment as the order being appealed. Plaintiff, though, argues that this order was void. Specifically, Plaintiff contends that the trial court's denial of Boise Cascade's prior motion to dismiss was, essentially, an order denying summary judgment because the trial court

considered matters outside the complaint. Therefore, Plaintiff contends, the subsequent order denying summary judgment was void and any appeal should have been taken from the first order. We disagree with Plaintiff.

The record shows that Boise Cascade did initially file a Rule 12(b)(6) motion to dismiss and that the trial court entered an order denying that motion. Plaintiff notes that in defense to the Rule 12(b)(6) motion it submitted approximately twenty-seven (27) pages of documents to the trial court, thus transforming the Rule 12(b)(6) motion into a motion for summary judgment.

It is true that "[a] Rule 12(b)(6) motion to dismiss for failure to state a claim is . . . converted to a Rule 56 motion for summary judgment when matters outside the pleadings are presented to and not excluded by the court." *Stanback v. Stanback*, 297 N.C. 181, 205, 254 S.E.2d 611, 627 (1979). However, "the trial court [is] not required to convert a motion to dismiss into one for summary judgment simply because additional documents [are] submitted." *Pinney v. State Farm Mut. Ins. Co.*, 146 N.C. App. 248, 252, 552 S.E.2d 186, 189 (2001). Where it is clear from the record, namely from the order itself, that the additional materials were not considered by the trial court, the 12(b)(6) motion is not converted into a Rule 56 motion. *Id.*

Here, the order denying Boise Cascade's Rule 12(b)(6) motion does not mention that the trial court considered anything beyond the pleadings. The order merely states that the court's decision was made after "having reviewed the pleadings and

having heard and considered the arguments of Counsel[.]" At best, the trial court's language converted the Rule 12(b)(6) motion, which properly focuses only on the complaint, into a Rule 12(c) motion, which focuses on all of the pleadings. We, therefore, deny Plaintiff's motion to dismiss Boise Cascade's appeal.

### III. Analysis

This appeal is from the denial of Boise Cascade's motion for summary judgment. We review an appeal from summary judgment *de novo*, to determine whether, in the light most favorable to the nonmoving party, there is any genuine issue of material fact and whether any party is entitled to judgment as a matter of law. *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008). "If there is any question as to the weight of evidence, summary judgment should be denied." *Marcus Bros. Textiles, Inc., v. Price Waterhouse, LLP,* 350 N.C. 214, 220, 513 S.E.2d 320, 325 (1999).

On appeal, Boise Cascade argues that the evidence showed, as a matter of law, that Boise Cascade was a "special employer" of Mr. Belk, and that, therefore, jurisdiction over Plaintiff's action belongs exclusively to the Industrial Commission. We agree.

The Workers' Compensation Act creates an exclusive remedy for employees injured in work-related incidents. N.C. Gen. Stat. Ann. § 97-10.1 (2013) ("[T]he rights and remedies herein granted to the employee . . . shall exclude all other rights and

remedies of the employee . . . as against the employer at common law or otherwise on account of such injury or death."). Where the Workers' Compensation Act applies, the employee is barred from pursuing a common law negligence action against his employer(s), *Pleasant v. Johnson*, 312 N.C. 710, 713, 325 S.E.2d 244, 247 (1985), and the trial courts are divested of jurisdiction. *Lemmerman v. A.T. Williams Oil Co.*, 318 N.C. 577, 579, 350 S.E.2d 83, 85 (1986).

Our Supreme Court has recognized that an employee may be in both the employment of his primary, general employer, and also be "lent" as a special, temporary employee to a secondary, special employer. *Leggette v. J. D. McCotter, Inc.*, 265 N.C. 617, 625, 144 S.E.2d 849, 855 (1965); *Leonard v. Tatum & Dalton Transfer Co.*, 218 N.C. 667, 671, 12 S.E.2d 729, 731 (1940); *Baker v. State*, 200 N.C. 232, 235, 156 S.E. 917, 918 (1931). But the lent employee is not automatically an employee of both the general and the special employer for the purpose of workers' compensation. *Id.*

Our Supreme Court has held that "[t]he crucial test in determining whether a servant furnished by one person to another becomes the employe [sic] of the person to whom he is loaned is whether he passes under the latter's right of control with regard not only to the work to be done *but also to the manner of performing it* [] irrespective of whether [the latter] actually *exercises* that control or not." *Weaver v. Bennett*, 259 N.C. 16, 28, 129 S.E.2d 610, 618 (1963). Our Supreme Court has applied

- 6 -

this test to determine whether a plaintiff-worker was a special employee of a defendant-company, and therefore subject to the jurisdiction of the Industrial Commission in seeking compensation/damages when he was injured on the job. *Moody v. Kersey*, 270 N.C. 614, 621, 155 S.E.2d 215, 220-21 (1967); *see also Rouse v. Pitt County Memorial Hosp.*, 343 N.C. 186, 197-98, 470 S.E.2d 44, 51 (1996) (applying the *Weaver* "right to control" test to determine whether a borrowed worker was a special employer).

Whether a lent worker became a special employee of the entity to whom he was lent is a question of fact. And, in a civil action, where the evidence is sufficient to create a genuine issue of fact on this issue, our Supreme Court has instructed that the determination is to be decided by the jury. *See Weaver*, 259 N.C. at 30, 129 S.E. 2d at 620 (reversing dismissal where evidence in the light most favorable to the plaintiff created a genuine issue of fact regarding whether there was an employment relationship between the lent worker and the special employer).[2]

Therefore, the question before us is whether there was a genuine issue of material fact before the trial court regarding whether Mr. Belk was a special, lent employee of Boise Cascade. For the reasons stated below, we conclude that the

---

[2] We do not disturb a jury's determination in a civil trial regarding the nature of the relationship between a lent worker and the company for whom he is working, where the determination is supported by evidence. However, in the context of a worker's compensation claim brought before the Industrial Commission, the reviewing court gives no deference to the Commission's findings on this jurisdictional issue, but reviews them *de novo*. *See, e.g., Whicker v. Compass Group USA, Inc.*, 246 N.C. App. 791, 795-96, 784 S.E.2d 564, 568 (2016) (reviewing "jurisdictional facts" *de novo*).

evidence established, as a matter of law, that Mr. Belk was, indeed, a special employee of Boise Cascade: The evidence conclusively establishes that control over the manner in which Mr. Belk performed his job passed to Boise Cascade. Accordingly, Boise Cascade was entitled to summary judgment.

In reaching our conclusion, we note the following uncontested facts:

The Agreement for Temporary Services between Aerotek (Mr. Belk's general employer) and Boise Cascade attributes the right to control Mr. Belk to Boise Cascade. Specifically, in that Agreement, Boise Cascade clearly undertook the right to control the day-to-day work activities of Mr. Belk, leaving administrative/clerical functions (payroll, etc.) to Aerotek, providing as follows:

> 1. . . . *[Aerotek] will be the general employer*, responsible for all administrative responsibilities and legal compliance, except as otherwise provided in this Agreement. *Boise Cascade will be the special employer, responsible for day-to-day supervision and control* of [Aerotek's] Employees who are assigned by [Aerotek] to render services to Boise Cascade, pursuant to this Agreement . . . . *Boise Cascade will also be considered an employer for purposes of state workers' compensation law*, although [Aerotek] will retain liability for workers' compensation benefits.
>  . . .
> 4. . . . .[Aerotek] shall have the right and responsibility to . . . [comply with] state and local taxes and charges incident to the provision of and payment of compensation for Temporary Services . . . .
>
> 5. Boise Cascade will be responsible for that portion of the day-to-day supervision and control of Employees as necessary to conduct Boise Cascade's business and shall determine the general procedures to be followed by the

Employees regarding the performance of their duties.

> 6. . . . *[Aerotek] shall inform the Employees that both [Aerotek] and Boise Cascade are considered their employer for workers' compensation benefits.*

(Emphasis added).

Our Supreme Court has stated that "most persuasive" to the determination of special employment is whether the contract between the employers gives the right to control the work of the employee to the special employer. *Harris v. Miller*, 335 N.C. 379, 395, 438 S.E.2d 731, 740 (1994) ("When a contract, written or oral, between two employers expressly provides that one or the other shall have right of control, solution of the [lent employee] question is relatively simple[.]" (citation omitted)). In its 1996 *Rouse* opinion, our Supreme Court repeated a statement it made in its 1994 *Harris* opinion, that "[w]here the [employers] have made an explicit agreement regarding the right of control, this agreement will be dispositive." *Rouse*, 343 N.C. at 200, 470 S.E.2d at 52. But we do not take this statement to mean that a statement contained in the contract between the employers is *conclusive* on the issue of whether the lent worker is an employee of the special employer, notwithstanding the use of the word "dispositive." Rather, such an agreement is merely strong evidence of the nature of the relationship between the lent worker and the special employer. Indeed, in *Rouse*, our Supreme Court recognized that the contract between the employers gave the right to control the lent workers to the special employer, but that this and other evidence

was sufficient only to raise a genuine issue of material fact as to whether there was indeed a right to control sufficient to create a special employment relationship. *Id.* at 201-02, 470 S.E.2d at 53.

In addition to the contract between Aerotek and Boise Cascade, there is other uncontradicted evidence demonstrating that Mr. Belk was a special employee of Boise Cascade. For instance, Mr. Belk was hired by Boise Cascade to serve as a mechanic in its maintenance department. Mr. Belk was fatally injured while repairing a hydraulic valve on one *of Boise Cascade's machines[3]* when part of the machine collapsed. It is uncontested, and therefore there is no genuine issue of fact, that Mr. Belk was performing the work of Boise Cascade, the special employer, when the incident occurred.

The evidence is uncontradicted that Boise Cascade had the right to control Mr. Belk with respect to the work he performed as a maintenance mechanic. Boise Cascade paid Mr. Belk an hourly wage. And Mr. Belk worked at Boise Cascade's plant for over a year before he was injured.

Plaintiff relies on various points in depositions that were before the trial court that suggest Boise Cascade did not provide training, direction, or supervision over

---

[3] Our Supreme Court has held that a presumption exists that a lent worker remains the sole employee of the general employer when the worker works with expensive equipment owned by the general employer. *Weaver*, 259 N.C. at 28-29, 129 S.E.2d at 619. But, here, there is no indication that Aerotek owned any equipment which was used by Mr. Belk. Rather, Mr. Belk was working with equipment owned by Boise Cascade.

Mr. Belk regarding his job duties. Regardless, Boise Cascade had the right and ability to control Mr. Belk's work pursuant to contract.

Plaintiff claims that its proceedings in the Industrial Commission against Aerotek alone preclude the possibility that Boise Cascade controlled Mr. Belk because the resulting Opinion and Award stated that "there [was] no question as to . . . nonjoinder of parties." However, the Industrial Commission made no rulings in its Opinion and Award as to whether Aerotek controlled Mr. Belk. Rather, the parties in that proceeding mutually stipulated both that there was no issue of nonjoinder and that Mr. Belk was an employee of Aerotek. In any event, this stipulation is not binding on Boise Cascade, who was not a party to that proceeding.

## IV. Conclusion

We conclude that there were no genuine questions of fact with respect to whether Mr. Belk was a special, lent employee of Boise Cascade. Even considering the evidence in the light most favorable to Plaintiff, we hold that the evidence conclusively showed that Mr. Belk was a special employee of Boise Cascade. Necessarily, exclusive jurisdiction over Plaintiff's claims rests in the Industrial Commission, not the trial court below. Therefore, we reverse the trial court's order denying Boise Cascade's motion for summary judgment.

REVERSED.

Judge ZACHARY concurs.

Judge BRYANT concurs in result only.