FRANKLIN ALLEN MOORE, PLAINTIFF V. T. H. EVANS, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS POLICE OFFICER IN THE AYDEN, NORTH CAROLINA POLICE DEPARTMENT, AND ROGER PAUL, IN HIS OFFICIAL CAPACITY AS CHIEF OF POLICE OF THE AYDEN, NORTH CAROLINA POLICE DEPARTMENT AND CITY OF AYDEN, NORTH CAROLINA, ET AL., DEFENDANTS

No. COA95-862

(Filed 15 October 1996)

**1. Appeal and Error § 118 (NCI4th)— denial of partial summary judgment—appealable—immunity claim**

The denial of a partial summary judgment for defendants Evans and Paul in an action arising from an alleged false imprisonment by officers was appealable where defendants had raised immunity. When the moving party claims sovereign, absolute or qualified immunity, the denial of a motion for summary judgment is immediately appealable.

**Am Jur 2d, Appellate Review § 170.**

**2. Municipal Corporations § 446 (NCI4th); Sheriffs, Police, and Other Law Enforcement Officers § 13 (NCI4th)— false arrest and malicious prosecution—officer and chief—official immunity not available—liability insurance**

Officer Evans and Chief Paul were not entitled to governmental and/or official immunity on claims of false imprisonment and malicious prosecution arising from an arrest. Police officers share in the immunity of their governing municipalities and are not entitled to the defense of governmental immunity to the extent that the municipality waived sovereign immunity by purchasing liability insurance. The city here had purchased liability insurance and the trial court properly denied summary judgment on state claims against defendants in their official capacities.

**Am Jur 2d, Municipal, County, School, and Tort Liability §§ 43, 45.**

**3. Arrest and Bail § 136 (NCI4th); Malicious Prosecution § 19 (NCI4th)— probable cause—issue of fact—summary judgment denied**

The trial court properly denied defendant Evans' motion for partial summary judgment in his individual capacity with respect to claims of false imprisonment and malicious prosecution arising from an arrest. A common element of each of these claims is

the absence of probable cause and there was a genuine issue of material fact as to whether Officer Evans had probable cause to arrest plaintiff.

**Am Jur 2d, Arrest § 144; Summary Judgment § 27.**

**4. Sheriffs, Police, and Other Law Enforcement Officers § 23 (NCI4th)— false arrest—civil rights claim—summary judgment for police chief in official capacity**

Summary judgment should have been granted for defendant Paul in his official capacity as Chief of Police on a 42 U.S.C. § 1983 claim arising from an arrest where the only allegations against defendant Paul relate to his official duties as the Chief of Police and plaintiff made no allegations that defendant Paul was present or participated in any manner in his arrest or post-arrest detention, or that defendant Paul acted corruptly, maliciously, or outside the scope of his employment. As plaintiff seeks monetary damages for alleged violations of his constitutional rights, he cannot recover against defendant Paul in his official capacity.

**Am Jur 2d, Sheriffs, Police, and Constables § 90; Summary Judgment § 26.**

**5. Sheriffs, Police, and Other Law Enforcement Officers § 23 (NCI4th)— false arrest—civil rights claim against officer— summary judgment proper in official capacity, not in individual capacity**

In an action arising from plaintiff's arrest by defendant Evans, summary judgment should have been granted for defendant Evans in his official capacity on plaintiff's action under 42 U.S.C. § 1983 because plaintiff sought monetary damages for alleged violations of his constitutional rights, but was properly denied in Evans' individual capacity because there was a genuine issue of fact as to whether the facts as presented were such as to lead a discreet and prudent person to believe that a criminal offense had been committed by plaintiff.

**Am Jur 2d, Sheriffs, Police, and Constables § 90; Summary Judgment § 27.**

Judge WALKER concurring in part and dissenting in part.

Appeal by defendants T. H. Evans and Roger Paul from order entered 7 June 1995 by Judge David Q. LaBarre in Pitt County Superior Court. Heard in the Court of Appeals 18 April 1996.

**MOORE v. EVANS**

[124 N.C. App. 35 (1996)]

*Steven M. Fisher and Mark A. Ward for plaintiff-appellee.*

*Ward and Smith, P.A., by Kenneth R. Wooten and Cheryl A. Marteney, for defendants-appellants T. H. Evans and Roger Paul.*

JOHNSON, Judge.

On 15 May 1993, Officers K. S. Stewart and T. H. Evans (defendant Evans) of the Ayden Police Department responded to a call regarding a possible breaking and entering at 205 Edge Road in Ayden, North Carolina. Upon arriving at the Edge Road address, Officer Stewart searched the surrounding area and discovered stereo speakers and other household items in the backyard of the residence, behind a fence. At the same time, Officer Evans spoke with Mable Sumpter, the neighbor who had called the Ayden Police Department after hearing noises coming from the 205 Edge Road residence and seeing someone in the backyard. As Mrs. Sumpter knew that her neighbors were out of town, she called the police department.

When Officer Evans questioned Mrs. Sumpter about her call to the police department, she explained that she had seen a black male, "wearing white clothing," in her neighbors' backyard. Mrs. Sumpter noted that she had not seen the suspect's face, and told Officer Evans that she could not identify the person. Officer Evans subsequently left Mrs. Sumpter's home, only to return moments later with plaintiff Franklin Allen Moore in the backseat of a patrol car. Officer Evans had Mr. Moore get out of the vehicle and stand approximately thirty (30) to forty (40) yards from Mrs. Sumpter, in front of the neighboring residence. A row of hedges separated Mrs. Sumpter and Mr. Moore. Mrs. Sumpter nodded her head at Officer Evans to indicate that the person was similarly attired to the person she had seen in her neighbors' backyard earlier.

Thereafter, Officer Evans put Mr. Moore into his patrol car and questioned him about his activities on the evening in question. Although Mr. Moore insisted upon his innocence, Officer Evans encouraged him to confess. Mr. Moore notes that at one point, the officer threatened to hold him in the car all night until he confessed; however, Mr. Moore would not confess. Subsequently, Officer Evans took Mr. Moore to the Ayden Police Department, where Officer Evans and another officer interrogated him. Although the officers insisted that things would go lighter for him if he would confess, Mr. Moore maintained his innocence. In fact, he told the officers that one of their

fellow officers had seen him at a nightclub at the time that the officers were insisting that he broke into the Edge Road residence.

After interrogating Mr. Moore, Officer Evans took him to a magistrate, and requested that the magistrate "[p]ut him under a high bond, I do not want him to get out." In response, the magistrate issued a warrant, charging Mr. Moore with felonious breaking and entering, and felonious larceny, and placing Mr. Moore under a $20,000.00 secured bond. Notably, the recommended minimum bond pursuant to the Pretrial Release Policies in the Three-A Judicial District for these charges is $7,500.00. Further, no inquiry was made into Mr. Moore's prior criminal record, nor his risk of flight, his finances, family ties, character, length of residence in the community, etc.—factors set forth in North Carolina General Statutes section 15A-534(b) and (c), which may justify such an excessive bond.

Since Mr. Moore could not post bail, he remained in jail. Although Officer Evans' testimony indicates otherwise, once Mr. Moore was arrested, the Ayden Police Department made a determination that no further investigation was necessary in the 15 May 1993 breaking and entering at 205 Edge Road.

On 20 May 1993, four days after Mr. Moore's arrest, an informant told Officer Evans that John Eric Ellis had committed the 15 May crime for which Mr. Moore had been arrested. Thereafter, on 21 May 1993, Ellis confessed to this crime, and indicated to Officer Evans that he had been wearing white shorts and a white shirt on the evening of 15 May 1993. Consequently, Officer Evans arrested Ellis for the 15 May break-in, and although he had a previous criminal record, Ellis was only placed under a $7,500.00 unsecured bond. However, Mr. Moore was not released from jail.

Mr. Moore's probable cause hearing was set for 8 June 1993— some twenty-three (23) days after his arrest and eighteen (18) days after Ellis' confession to the crime for which Mr. Moore had been charged. Officer Evans was not present for the hearing, and therefore, the trial judge continued Mr. Moore's case until 22 June 1993. Mr. Moore's attorney requested a bond reduction for his client at the 8 June hearing, and the judge continued this request until 9 June 1993, so that the assistant district attorney could contact Officer Evans and discuss the logistics of the case. Upon calling Officer Evans, the prosecutor was told that another person had been arrested, and that the case against Mr. Moore should be dismissed. The charges against Mr.

Moore were consequently dismissed and he was released on 8 June 1993.

On 16 May 1994, Mr. Moore filed this action in Pitt County Superior Court against defendants T. H. Evans, individually and in his official capacity as a police officer with the City of Ayden Police Department, Roger Paul, in his official capacity as Chief of Police of the City of Ayden Police Department, and the City of Ayden, alleging false imprisonment, malicious prosecution and deprivation of his civil rights under the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution in violation of 42 U.S.C. § 1983. Defendants answered, denying the material allegations of the complaint and raising the defenses of qualified and official immunity. Thereafter, defendants Evans and Paul moved for partial summary judgment, contending that they were entitled to such relief on the grounds of qualified and official immunity. By order entered 7 June 1995, Judge David Q. LaBarre denied the motion. Defendants Evans and Paul appeal.

[1] At the outset, we must note that an order which does not completely dispose of a case is interlocutory and generally not appealable. *Liggett Group v. Sunas*, 113 N.C. App. 19, 23, 437 S.E.2d 674, 677 (1993). The purpose of this rule prohibiting interlocutory appeals is to " 'prevent fragmentary, premature and unnecessary appeals by permitting the trial court to bring the case to final judgment before it is presented to the appellate courts.' " *Jeffreys v. Raleigh Oaks Joint Venture*, 115 N.C. App. 377, 379, 444 S.E.2d 252, 253 (1994). "The denial of a motion for summary judgment is not a final judgment and is generally not immediately appealable, even if the trial court has attempted to certify it for appeal under Rule 54(b) of the North Carolina Rules of Civil Procedure." *Henderson v. LeBauer*, 101 N.C. App. 255, 264, 399 S.E.2d 142, 147 (citing *Lamb v. Wedgewood South Corp.*, 308 N.C. 419, 302 S.E.2d 868 (1983)), *disc. review denied*, 328 N.C. 731, 404 S.E.2d 868 (1991).

However, when the moving party claims sovereign, absolute or qualified immunity, the denial of a motion for summary judgment is immediately appealable. *See, e.g., Davis v. Town of Southern Pines*, 116 N.C. App. 663, 449 S.E.2d 240 (1994), *disc. review denied*, 339 N.C. 737, 454 S.E.2d 648 (1995); *Herndon v. Barrett*, 101 N.C. App. 636, 400 S.E.2d 767 (1991); *Corum v. University of North Carolina*, 97 N.C. App. 527, 389 S.E.2d 596, *aff'd in part and rev'd in part on other grounds*, 330 N.C. 761, 413 S.E.2d 276, *cert. denied*, 506 U.S.

985, 121 L. Ed. 2d 431 (1992). In fact, the United States Supreme Court has previously held that a claim of qualified immunity to the extent that it is based on legal questions of whether a violation of clearly established law occurred is immediately appealable since it is immunity from suit rather than a defense to liability. *Mitchell v. Forsyth*, 472 U.S. 511, 525, 86 L. Ed. 2d 411, 424 (1985). As such, defendants' appeal is properly before this Court.

## I. State Claims

[2] On appeal, defendants Evans and Paul first contend that the trial court erred in denying their motion for partial summary judgment regarding Mr. Moore's claims for malicious prosecution and false imprisonment (collectively referred to as "state claims" herein). Specifically, defendants contend that they were entitled to governmental and/or official immunity on these claims. We do not agree.

Summary judgment is properly granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (1990). The moving party has the burden of "positively and clearly" establishing the absence of any genuine issue of material fact. *James v. Clark*, 118 N.C. App. 178, 180, 454 S.E.2d 826, 828, *disc. review denied*, 340 N.C. 359, 458 S.E.2d 187 (1995). A movant may meet this burden by showing that (1) an essential element of the nonmovant's case is nonexistent; or (2) based upon discovery, the nonmovant cannot produce evidence to support an essential element of his claim; or (3) the movant cannot surmount an affirmative defense which would bar the claim. *Watts v. Cumberland County Hosp. System*, 75 N.C. App. 1, 6, 330 S.E.2d 242, 247 (1985), *rev'd on other grounds*, 317 N.C. 321, 345 S.E.2d 201 (1986). In making its decision on the motion, the trial court must consider the evidence in the light most favorable to the nonmovant, drawing all inferences of fact from the evidence presented at the hearing in his favor. *Rouse v. Pitt County Memorial Hospital*, 116 N.C. App. 241, 244, 447 S.E.2d 505, 507 (1994), *aff'd*, 343 N.C. 186, 470 S.E.2d 44 (1996).

We note that defendant City of Ayden is not a party to this appeal from Judge LaBarre's order denying defendants Evans and Paul's motion for partial summary judgment. In fact, it is well established that a municipality is not liable for the torts of its officers and employees if committed in the performance of a governmental func-

tion. *Moore v. City of Creedmoor*, 120 N.C. App. 27, 45-6, 460 S.E.2d 899, 910 (1995), *disc. review allowed*, 342 N.C. 658, 467 S.E.2d 718 (1996). " 'A police officer in the performance of his[/her] duties is engaged in a governmental function.' " *Mullins v. Friend*, 116 N.C. App. 676, 680, 449 S.E.2d 227, 230 (1994) (quoting *Galligan v. Town of Chapel Hill*, 276 N.C. 172, 175, 171 S.E.2d 427, 429 (1970)). A municipality which purchases liability insurance waives governmental immunity, thereby subjecting itself to liability for the tortious acts of its officers and employees. N.C. Gen. Stat. § 160A-485 (1994).

In the instant action, Mr. Moore presented evidence that defendant City had purchased liability insurance; and defendants admit to such. Thus, defendant City has waived any defense of governmental immunity with respect to Mr. Moore's state claims to the extent that Mr. Moore's damages do not exceed the amount of insurance coverage. *Id.*

A. Defendant Paul

Mr. Moore sues defendant Paul in his official capacity as Chief of Police of the City of Ayden. Police officers, as public officers, share in the immunity of their governing municipalities. *Taylor v. Ashburn*, 112 N.C. App. 604, 607, 436 S.E.2d 276, 279 (1993), *cert. denied*, 336 N.C. 77, 445 S.E.2d 46 (1994). However, where as in the case presently before us, the municipality waives its sovereign immunity by purchasing liability insurance, public officers such as defendant Paul are not entitled to the defense of governmental immunity, at least as to the extent of coverage purchased by the municipality. *Moore*, 120 N.C. App. at 46-7, 460 S.E.2d at 911. Accordingly, the trial court properly denied defendant Paul's motion for partial summary judgment regarding Mr. Moore's state claims against him in his official capacity as Chief of Police.

B. Defendant Evans

Mr. Moore sues defendant Evans in both his official and individual capacities. Like defendant Paul, defendant Evans is not entitled to the defense of governmental immunity because defendant City has waived its sovereign immunity by purchasing liability insurance. *Id.* Therefore, the trial court properly denied this motion as to defendant Evans in his official capacity as police officer with the City of Ayden Police Department.

[3] As to Mr. Moore's claims against defendant Evans in his individual capacity, we find that there was an issue of fact as to whether

defendant Evans was entitled to the use of the official immunity defense. To maintain a suit against a public official in his/her individual capacity, the plaintiff must make a *prima facie* showing that the official's actions (under color of authority) are sufficient to pierce the cloak of official immunity. *Epps v. Duke University*, 122 N.C. App. 198, 468 S.E.2d 846 (1996), *disc. review denied*, No. 230P96 (N.C. Supreme Court Sep. 5, 1996). Actions that are malicious, corrupt or outside of the scope of official duties will pierce the cloak of official immunity, thus holding the official liable for his acts like any private individual. *Gurganious v. Simpson*, 213 N.C. 613, 616, 197 S.E. 163, 164 (1938); *Golden Rule Insurance Co. v. Long*, 113 N.C. App. 187, 194, 439 S.E.2d 599, 603, *disc. review denied*, 335 N.C. 555, 439 S.E.2d 145 (1993).

"False imprisonment" has been defined as "the illegal restraint of a person against his will." *Marlowe v. Piner*, 119 N.C. App. 125, 129, 458 S.E.2d 220, 223 (1995) (citing *Fowler v. Valencourt*, 334 N.C. 345, 348, 435 S.E.2d 530, 532 (1993)). A restraint is illegal if it is unlawful or not consented to. *Id.* Specifically, a warrantless arrest without probable cause lacks legal authority and is therefore unlawful. *State v. Zuniga*, 312 N.C. 251, 259, 322 S.E.2d 140, 145 (1984). "A false arrest is an arrest without legal authority and is one means of committing a false imprisonment." *Marlowe*, 119 N.C. App. at 129, 458 S.E.2d at 223 (citing *Myrick v. Cooley*, 91 N.C. App. 209, 212, 371 S.E.2d 492, 494, *disc. review denied*, 323 N.C. 477, 373 S.E.2d 865 (1988)).

In order to maintain an action for malicious prosecution, the plaintiff must demonstrate that the defendant "(1) instituted, procured or participated in the criminal proceeding against [the] plaintiff; (2) without probable cause; (3) with malice; and (4) the prior proceeding terminated in favor of [the] plaintiff." *Williams v. Kuppenheimer Manufacturing Co.*, 105 N.C. App. 198, 200, 412 S.E.2d 897, 899 (1992) (citing *Cook v. Lanier*, 267 N.C. 166, 147 S.E.2d 910 (1966)). "[M]alice can be inferred from the want of probable cause alone." *Fowler v. Valencourt*, 108 N.C. App. 106, 111, 423 S.E.2d 785, 788 (1992) (citing *Cook*, 267 N.C. at 170, 147 S.E.2d at 914; *Wright v. Harris*, 160 N.C. 543, 550, 76 S.E. 489, 492 (1912)), *rev'd in part on other grounds*, 334 N.C. 345, 435 S.E.2d 530 (1993). As it is undisputed that defendant Evans initiated the criminal prosecution against Mr. Moore and that the prosecution ended with a dismissal of the charges against him, the only issue as to Mr. Moore's claim for malicious prosecution is whether defendant Evans had probable cause to initiate the

criminal prosecution against him. Hence, a common element of each of the state claims alleged (false imprisonment and malicious prosecution) is the absence of probable cause.

The test for whether probable cause exists is an objective one— whether the facts and circumstances, known at the time, were such as to induce a *reasonable* police officer to arrest, imprison, and/or prosecute another. *See Fowler*, 108 N.C. App. at 112, 423 S.E.2d at 788 (quoting *Pitts v. Pizza, Inc.*, 296 N.C. 81, 87, 249 S.E.2d 375, 379 (1978)). In *Pitts*, our Supreme Court stated:

> The existence or nonexistence of probable cause is a mixed question of law and fact. If the facts are admitted or established it is a question of law for the court. Conversely, when the facts are in dispute the question of probable cause is one of fact for the jury.

296 N.C. at 87, 249 S.E.2d at 379 (citations omitted), *quoted in Fowler*, 108 N.C. App. at 112, 423 S.E.2d at 788.

In the case *sub judice*, Mr. Moore brought claims against defendant Evans for false imprisonment, as well as malicious prosecution. In his complaint, Mr. Moore alleges that Evans' actions "constituted both an intentional and reckless disregard for the legal rights of plaintiff."

After close examination of the record, we find that there is indeed genuine issue of material fact as to whether defendant Evans had probable cause to arrest Mr. Moore. A review of the record tends to show conflicting evidence, thereby creating this question of material fact for the jury as fact finder. In an affidavit, Mrs. Mable Sumpter stated in pertinent part:

> On May 16, [sic] 1993 I was in my home and heard a knocking noise outside . . . I saw a black male in the Williams' backyard. He was wearing white clothing but I could not see his face. I knew that the Williams were out of town so I went back inside my home and called the police. I then continued to watch out my window until the police arrived. Sergeant Evans of the Ayden Police Department came to my home to speak with me concerning the call that I made. I told him what I had seen and told him the person had on white clothing. *I also told him that I did not see the person's face and that I could not identify the person. . . .* A few moments later Sergeant Evans returned in his patrol car with an individual in the backseat. Sergeant Evans had the individual get

MOORE v. EVANS

[124 N.C. App. 35 (1996)]

out of the patrol car and stand beside it directly in front of the Williams' house. . . . I walked out of my front door and stood by the hedge row at the front of my house and observed the individual standing in front of the patrol car. I nodded to Sergeant Evans indicating that the individual had on the same color clothing as the person that I had seen in the Williams' backyard. *I had previously told Sergeant Evans that I would not be able to identify anyone other than to say that they had similar colored clothing because I did not see the person's face.* . . . After I nodded to Sergeant Evans, he placed the individual back in the patrol car. He did not speak with me anymore about this suspect on the night of this incident and neither Sergeant Evans nor anyone from the Ayden Police Department has spoken to me since regarding the incident.

(emphasis added). This evidence directly conflicts with the affidavit and testimony of defendant Evans that Mrs. Sumpter made a "positive identification" of Mr. Moore. Defendant Evans stated in his affidavit:

Mrs. Sumpter was told to go into her house while [the officers] were getting Plaintiff out of the car. Plaintiff then was positioned so that his profile was facing Mrs. Sumpter. Mrs. Sumpter indicated that Plaintiff looked like the black male she had seen standing on the porch who ran from the house, but she wanted Plaintiff to turn around because *she had seen him from the back* standing on the porch. Plaintiff was turned around, and *Mrs. Sumpter viewed him from the back, and then positively identified Plaintiff* as the man she had seen next door.

(emphasis added). Such converse testimony certainly creates issues of fact to be determined by a jury as to whether probable cause existed to arrest Mr. Moore.

Further, contrary to the dissenting opinion, we find the cases of *State v. Joyner*, 301 N.C. 18, 269 S.E.2d 125 (1980), and *State v. Wrenn*, 316 N.C. 141, 340 S.E.2d 443 (1986), to be inordinately distinguishable from the facts herein. First, in *Joyner*, the North Carolina Supreme Court found that probable cause to arrest existed where an officer observed the defendant approximately three and one-half (3 1/2) blocks from the rape victim's apartment, approximately seven (7) to ten (10) minutes following the commission of the offenses of burglary, rape and larceny; the officer had earlier been alerted by police radio concerning the commission of the offenses

**MOORE v. EVANS**

[124 N.C. App. 35 (1996)]

and had been given a description of the suspect as a *"black male with facial hair, wearing a toboggan and a green or blue jogging suit with white strips down the sides of the trousers"*; when the officer observed defendant, he reconfirmed this description by radio; and the officer noted that defendant matched the description and placed him under arrest. *Id.* at 22, 269 S.E.2d at 129 (emphasis added).

Thus, the description of the suspect in *Joyner* was patently more detailed than the bare bones description of the suspect in the subject case as a "black male in white clothing." Moreover, Mrs. Sumpter, the eye witness herein, specifically stated that she told the arresting officer that she could not identify the suspect.

Similarly in *Wrenn*, our Supreme Court found probable cause for arrest to exist when the facts indicated that the defendant's vehicle was stopped exiting the apartment complex in which the crimes occurred, during the early morning hours, just moments after the crimes were committed; defendant was ordered to step out of the vehicle, was "patted down" and his car was searched; a loaded revolver was found in the unlocked console in the front seat of the vehicle; and defendant matched the description given by the witness—"a white male, dressed in a dark sweatsuit and possibly wearing a knit hat" and "possibly armed." 316 N.C. 141, 340 S.E.2d 443.

In the instant case, Mr. Moore was some five (5) blocks away from the crime scene when he was seen by a police officer. Upon being approached by the officer, defendant was cooperative when told about the breaking and entering at 205 Edge Road and asked about his activities on that evening. He denied any knowledge of the crime, but agreed to accompany the officer to the crime scene. Significantly, the record does not indicate whether Mr. Moore was leaving the vicinity of the crime scene or approaching that area. Additionally, none of the other determinative factors found in *Wrenn* are present herein—Mr. Moore had neither weapon nor stolen items in his possession when approached. Undoubtedly, any black male wearing white clothing in the City of Ayden on 15 May 1993 would have matched the general description given to defendant Evans on that evening. Regrettably, we are left with the tragic conclusion that notwithstanding his innocence, any such male may well have been arrested and subjected to the same indignities faced by Mr. Moore.

The record further shows that following Mr. Moore's arrest, the magistrate set bond at $20,000.00, ostensibly in response to defendant Evans' request that Mr. Moore be placed under a "high bond" so that

he would be unable to get out of jail. On or about 20 May 1993, another officer told Officer Evans that an informant had revealed that John Eric Ellis had broken into the house on Edge Road. Thereafter, police officers questioned Ellis and obtained his admission that he had been wearing white clothing on the night of 15 May 1993 and that he had committed the crime for which Mr. Moore had been charged. However, Deputy Evans stated that he "had encountered Mr. Ellis on prior occasions and knew that he had a propensity for not telling the entire truth." And that based on that perception and "due to the volume of items that had been taken from the house . . . , [he] still believed that two persons were involved in the break-in at Edge Road, so Plaintiff was not immediately released from custody."

Significantly, evidence was also presented which tended to conflict with defendant Evans' statement that he did not release Mr. Moore from jail after Ellis' arrest, because he "believed that two persons were involved in the break-in at Edge Road." First, the public defender representing Ellis, the person who confessed to committing the 15 May break-in at 205 Edge Road, noted in his affidavit that no mention had been made to him of an accomplice, co-defendant, or second party being involved in the 15 May break-in. Moreover, the Incident/Investigation Report of the crime indicates that no further investigation was needed of the crime after Mr. Moore's arrest—indicating a belief that the one person who had perpetrated the break-in at the Edge Road residence was in custody.

In the light most favorable to Mr. Moore, defendant Evans has failed to meet his burden of showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Indeed, the evidence tends to show that there was genuine issue of material fact as to whether defendant Evans had probable cause to arrest Mr. Moore. As such, the trial court properly denied defendant Evans' motion for partial summary judgment with respect to Mr. Moore's state claims against him in his individual and official capacities.

## II. Federal Constitutional Claims

[4] Defendants next contend that they were entitled to summary judgment regarding Mr. Moore's federal constitutional claims. In his complaint, Mr. Moore alleges that defendants deprived him of his rights under the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution in violation of 42 U.S.C. § 1983.

Section 1983 provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom or usage of [the United States], subjects . . . any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983. Our Supreme Court has previously held,

> "when an action is brought under section 1983 in state court against the State, its agencies, and/or its officials acting in their official capacities, neither a State nor its officials acting in their official capacities are 'persons' under section 1983 when the remedy sought is monetary damages."

*Messick v. Catawba County*, 110 N.C. App. 707, 713, 431 S.E.2d 489, 493, quoting *Corum*, 330 N.C. at 771, 413 S.E.2d at 282-83, *disc. review denied*, 334 N.C. 621, 435 S.E.2d 336 (1993). In *Messick*, the Court interpreted this rule to preclude a § 1983 action against a county, its commissioners, as well as the sheriff and police officers in their official capacity. 110 N.C. App 707, 431 S.E.2d 489.

A. Defendant Paul

In his complaint, Mr. Moore makes no allegations that defendant Paul was present or participated in any manner in his arrest or post-arrest detention, nor does Mr. Moore allege that defendant Paul acted corruptly, maliciously, or outside of the scope of his employment. Rather, Mr. Moore's only allegations against defendant Paul relate to his official duties as the Chief of Police of the Ayden Police Department. As such, we must treat Mr. Moore's claims against defendant Paul in his official capacity.

As Mr. Moore herein seeks monetary damages for alleged violations of his constitutional rights, he cannot recover against defendant Paul in his official capacity under § 1983. *See id.* Hence, summary judgment is proper in regards to Mr. Moore's § 1983 claims against defendant Paul in his official capacity.

B. Defendant Evans

[5] Similarly, Mr. Moore is also precluded from recovering against defendant Evans in his official capacity under § 1983. *Id.* In addition,

the United States Supreme Court has held that public officials who perform discretionary functions are entitled to qualified immunity from suit against them personally in their individual capacity under 42 U.S.C. § 1983. However, a public official, like defendant Evans, may still be personally liable for damages under § 1983 where qualified immunity is not available. *Lenzer v. Flaherty,* 106 N.C. App. 496, 506, 418 S.E.2d 276, 282 (citing *Corum,* 330 N.C. at 772, 413 S.E.2d at 283), *disc. review denied,* 332 N.C. 345, 421 S.E.2d 348 (1992).

Generally, qualified immunity protects public officials from personal liability for performing discretionary functions to the extent that such conduct " 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Corum,* 330 N.C. at 772-73, 413 S.E.2d at 284 (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 73 L. Ed. 2d 396, 410 (1982)), *quoted in Lenzer,* 106 N.C. App. at 508, 418 S.E.2d at 284. Clearly, " 'the doctrine of qualified immunity does not extend protection to those law enforcement officials who . . . knowingly violate the law.' " *Fowler,* 108 N.C. App. at 113-14, 423 S.E.2d at 789-90 (quoting *Malley v. Briggs,* 475 U.S. 335, 341, 89 L. Ed. 2d 271, 278 (1986)).

In order to establish the existence of an official's right to the defense of qualified immunity, one must (1) identify the specific right allegedly violated; (2) determine whether that right was clearly established; and (3) if clearly established, determine whether a reasonable person in the officer's position would have known that his/her actions would violate that right. *Pritchett v. Alford,* 973 F.2d 307, 312 (4th Cir. 1992). "The first two determinations are questions of law for the court and should always be decided at the summary judgment stage." *Davis v. Town of Southern Pines,* 116 N.C. App. 663, 670, 449 S.E.2d 240, 244 (1994) (citing *Pritchett,* 973 F.2d at 313; *Lee v. Greene,* 114 N.C. App. 580, 585, 442 S.E.2d 547, 550 (1994)), *disc. review denied,* 339 N.C. 737, 454 S.E.2d 648 (1995). The third determination, however, " 'requires the factfinder to make factual determinations concerning disputed aspects of the officer['s] conduct.' " *Id.* (quoting *Lee,* 114 N.C. App. at 585, 442 S.E.2d at 550).

As to Mr. Moore's alleged Fourth Amendment violation, we find that Mr. Moore's right to be free from unconstitutional arrests to warrant legal protection. Unquestionably, a police officer may be held liable for an unconstitutional arrest made without probable cause in violation of the Fourth Amendment to the United States Constitution. *See Malley,* 475 U.S. 335, 89 L. Ed. 2d 271.

MOORE v. EVANS

[124 N.C. App. 35 (1996)]

While it is true that the Fourth Amendment to the United States Constitution allows an officer to briefly detain a suspect if there is a reasonable, articulable suspicion that the suspect committed a crime, *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889 (1968), an officer must have probable cause to arrest that suspect. *Myrick*, 91 N.C. App. 209, 371 S.E.2d 492. Probable cause to arrest has been found to exist where a suspect is found in the general area of the crime and fits the description given by a witness to the crime. *Wrenn*, 316 N.C. 141, 340 S.E.2d 443; *Joyner*, 301 N.C. 18, 269 S.E.2d 125. *See also State v. Harrell*, 67 N.C. App. 57, 312 S.E.2d 230 (1984) (recognizing that a description of either a person or an automobile may furnish reasonable grounds for arresting and detaining a criminal suspect); *in accord State v. Phillips*, 300 N.C. 678, 268 S.E.2d 452 (1980); *State v. Tippett*, 270 N.C. 588, 155 S.E.2d 269 (1967), *rev'd on other grounds, State v. Worsley*, 336 N.C. 268, 443 S.E.2d 68 (1994).

The facts in the instant case tend to show that defendant Evans told other officers, who arrived at the scene after defendant Evans and Officer Stewart, that Mrs. Sumpter had seen a black male, wearing a white shirt and white shorts, at her neighbors' house. Notably, however, Mrs. Sumpter stated in her affidavit that she had identified the suspect only as being a black male, wearing white clothing. In response to this description, Officer Vance Head left the scene and drove around the neighborhood, where he observed Mr. Moore—a black male, wearing white shorts and a white shirt, riding a bicycle approximately four (4) to five (5) blocks from the crime scene. In light of the description given by defendant Evans, the officer stopped Mr. Moore and questioned him about his knowledge of the break-in at 205 Edge Road. Although Mr. Moore denied any knowledge of the incident, he was asked to accompany Officer Head to the scene, which he did.

Officer Head subsequently returned to the scene with Mr. Moore, where Mrs. Sumpter allegedly "positively identified" him. However, according to Mrs. Sumpter, she never positively identified Mr. Moore—she only nodded her head that Mr. Moore was wearing white clothing, as she had previously stated. Mrs. Sumpter specifically told defendant Evans that she could not identify the suspect, because he had been so far away when she had seen him in her neighbors' backyard. There is, therefore, a genuine issue of material fact as to whether Mrs. Sumpter's "identification" was positive and could serve to give defendant Evans probable cause to arrest Mr. Moore.

Defendants contend that absent Mrs. Sumpter's identification, probable cause still existed for Mr. Moore's arrest. If this were true, then as stated previously, on 15 May 1996, any black male, with white clothing, in the city of Ayden would have been subject to arrest. This we cannot countenance. Absent any other circumstantial evidence, we simply cannot say that as a matter of law defendant Evans had probable cause to arrest Mr. Moore. In this case, factual determinations regarding defendant Evans' conduct and its circumstances are in question. As the Supreme Court stated in *Corum*,

> "[A] purely 'objective' test cannot in the end avoid the necessity to inquire into official motive or intent or purpose when such states of mind are essential elements of the constitutional right allegedly violated."

*Corum*, 330 N.C. at 773, 413 S.E.2d at 284 (quoting *Collinson v. Gott*, 895 F.2d 994, 1001-02 (4th Cir. 1990) (Phillips, J. concurring)). Moreover,

> "Where the defendant's subjective intent is an element of the plaintiff's claim and the defendant has moved for summary judgment based on a showing of the objective reasonableness of his actions, the plaintiff may avoid summary judgment . . . by pointing to *specific evidence* that the officials' actions were improperly motivated.

*Id.* at 774, 413 S.E.2d at 285 (quoting *Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988)).

In the instant action, in the light most favorable to Mr. Moore, the evidence tends to show that defendant Evans requested the magistrate to set Mr. Moore's bond high; that even after another person was questioned and confessed to the crime, admitting that he wore white clothing on that evening, defendant Evans failed to release Mr. Moore; that defendant Evans failed to question a key alibi witness, a fellow police officer, about Mr. Moore's whereabouts on the evening of 15 May 1993; that defendant Evans failed to appear in court for Mr. Moore's probable cause hearing; and that only after being questioned about the case by the assistant district attorney did the officer tell her that another person had been charged with the crime for which Mr. Moore had been arrested and imprisoned. Defendant Evans defends his actions, contending that he was still investigating the crime as he suspected that there were at least two persons who participated in the 15 May break-in, due to the amount of personal property removed

from the Edge Road residence. Defendant Evans also noted that he questioned the credibility of Mr. Ellis' confession to the crime because of his reputation for dishonesty.

As all evidence presented by Mr. Moore at this stage of the proceedings must be considered "indulgently," *Fowler*, 108 N.C. App. at 114, 423 S.E.2d at 790 (citing *Page v. Sloan*, 281 N.C. 697, 190 S.E.2d 189 (1972)), and "as the slightest doubt as to the facts entitles plaintiff to a trial," *id.* (citing *Snipes v. Jackson*, 69 N.C. App. 64, 316 S.E.2d 657, *disc. review denied*, 312 N.C. 85, 321 S.E.2d 899 (1984)), summary judgment on the issue of defendant Evans' qualified immunity was properly denied.

Mr. Moore also contends that his bail was excessive in violation of his Eighth Amendment rights, and consequently § 1983. However, it is the magistrate, and not defendant Evans, who is responsible for setting Mr. Moore's bail; therefore, this contention is without merit.

In a related argument, Mr. Moore further contends that defendants violated his Eighth Amendment right to be free from cruel and unusual punishment. The United States Supreme Court stated in *Ingraham v. Wright*, "An examination of the history of the Amendment and the decisions of this Court construing the proscription against cruel and unusual punishment confirms that it was designed to protect those convicted of crimes." 430 U.S. 651, 664, 51 L. Ed. 2d 711, 725 (1977). Therefore, we find that the Eighth Amendment is inapplicable to the present case, as Mr. Moore was never formally adjudicated guilty of any crime.

Mr. Moore also alleges that defendant Evans violated § 1983 by depriving him of "life, liberty or property without due process of law," in violation of the Fourteenth Amendment. To successfully assert a § 1983 claim based upon the violation of the Fourteenth Amendment, a plaintiff "must assert facts that, at a minimum, demonstrate Defendants acted with deliberate or reckless intent." *Romero v. Fay*, 45 F.3d 1472, 1478 (10th Cir. 1995).

As noted herein, in the light most favorable to Mr. Moore, we find that there is an issue of fact as to whether defendant Evans acted with reckless indifference to Mr. Moore's constitutional rights. Contrary to defendant Evans' contention that the police department believed two people to be involved in the break-in, the Incident/Investigation Report of the crime indicated that no further investigation was needed of the crime after Mr. Moore's arrest. Further, contrary to

defendant Evans' assertion that he attempted in good faith to verify Mr. Moore's alibi witnesses, defendant Evans makes no mention of ever trying to speak with the Ayden police officer who Mr. Moore had specifically indicated had seen him at a nightclub at the time that the break-in occurred. Moreover, Mr. Moore indicates that he never saw Rabbit Forbes on the evening in question—in spite of defendant Evans' insistence that it was Mr. Forbes who confirmed that Mr. Moore was at the Ayden Lounge on 15 May, at the time of the break-in. In addition, defendant Evans states that he contacted the District Attorney's office with this information, while the assistant district attorney assigned to prosecute Mr. Moore notes in her affidavit that it was she who contacted defendant Evans regarding the status of the case, after he failed to appear in court for Mr. Moore's probable cause hearing. We conclude that there is genuine issue of fact as to whether the facts as presented were such as to lead a discreet and prudent person to believe that a criminal offense had been committed by Mr. Moore. Accordingly, summary judgment was properly denied as to Mr. Moore's § 1983 claim against defendant Evans in his individual capacity.

### III. Conclusion

In light of the foregoing, the trial court's denial of defendant Evans and Paul's motion for partial summary judgment is affirmed as to Mr. Moore's state claims against defendant Evans in his official and individual capacities; and as to Mr. Moore's federal constitutional claims against defendant Evans in his individual capacity. The trial court's denial of partial summary judgment must, however, be reversed as to Mr. Moore's federal constitutional claims against defendant Evans and Paul in their official capacities.

Affirmed in part, and reversed in part.

Judge WYNN concurs.

Judge WALKER concurs in part, and dissents in part.

Judge WALKER concurring in part and dissenting in part.

I concur with the majority's decision to reverse the trial court's denial of summary judgment as to plaintiff's federal constitutional claims against defendant City, and defendants Paul and Evans in their official capacities. However, I respectfully dissent from the majority's

opinion affirming the trial court's denial of defendants' motion for summary judgment as to plaintiff's state claims against defendant City and defendant Evans in his official and individual capacity and federal constitutional claims against defendant Evans in his individual capacity.

## I. State Claims

In the present case, plaintiff brought claims against defendant City and defendant Evans individually and in his official capacity for false imprisonment and malicious prosecution. Defendants contend that they are entitled to summary judgment because plaintiff cannot prove an essential element of each offense nor can plaintiff surmount the affirmative defense of governmental immunity. A common element of each claim is the requirement that plaintiff demonstrate that defendant acted without probable cause.

### a. Probable Cause

The majority concludes that "there is indeed a genuine issue of material fact as to whether defendant Evans had probable cause to arrest, imprison, and prosecute plaintiff." The majority relies on Mrs. Sumpter's affidavit in which she states:

> I nodded to Sergeant Evans indicating that the individual had on the same color clothing as the person that I had seen in the Williams' backyard. I had previously told Sergeant Evans that I would not be able to identify anyone. . . .

This affidavit conflicts with the affidavits from Officers K.S. Stewart, Vance Head, and defendant Evans which state that they were present when Mrs. Sumpter "positively identified" the plaintiff as the man she had seen in the neighbor's backyard. However, I disagree that a genuine issue of material fact exists so as to preclude summary judgment in favor of defendants.

Notwithstanding the question of whether Mrs. Sumpter "positively identified" the plaintiff, probable cause existed to justify the warrantless arrest of the plaintiff. In its opinion the majority recognizes the line of cases holding that probable cause to arrest exists where a suspect is found in close proximity to the place where the offense occurred and where the similarity of the suspect's appearance fits the description given by the witness. *See e.g., State v. Joyner*, 301 N.C. 18, 22, 269 S.E.2d 125, 129 (1980) (holding that probable cause existed to arrest the suspect where the suspect described

as a bearded black male, wearing a toboggan and a jogging outfit was located approximately three and one-half blocks from the scene of the crime).

Our Supreme Court was asked to determine if sufficient evidence existed to support a finding of probable cause in the case of *State v. Wrenn*, 316 N.C. 141, 340 S.E.2d 443 (1986). I interpret the holding in *Wrenn* to be different from that of the majority opinion. The majority states that probable cause was found "when the facts indicated that the defendant's vehicle was stopped exiting the apartment complex in which the crimes occurred; defendant was ordered to step out of the vehicle, was 'patted down' and his car was searched; [and] a loaded revolver was found in the unlocked console in the front seat of the vehicle . . . ." However, the finding of a weapon in the vehicle was not a factor considered by the Supreme Court in finding that probable cause existed for the arrest of defendant. Rather, such evidence was admissible because the search of defendant's vehicle was incident to a lawful arrest. Thus, probable cause must have existed to justify a warrantless arrest prior to the search of defendant's vehicle. Accordingly, the Supreme Court held:

> We find that the officers had probable cause to arrest defendant. Defendant was apprehended almost immediately after the reported felony had been committed as he exited victim's apartment complex at an early morning hour when there was no other vehicular or pedestrian traffic in the area. Defendant's appearance at the time of the arrest fit victim's general description of her assailant, i.e., white male wearing dark clothing. Under these circumstances, we find that the proximity of defendant to the location where the offenses were committed and the similarity of defendant's appearance to the description which had been reported to the police provided the arresting officer with the element of probable cause necessary to effectuate the [warrantless] arrest. *See State v. Joyner*, 301 N.C. 18, 22 269 S.E.2d 125, 129.

*Wrenn*, 316 N.C. at 147, 340 S.E.2d at 447-48.

In the present case, the police were alerted on 15 May at 11:10 p.m. by Mrs. Sumpter that a break-in was in progress at 205 Edge Road. Officers Evans, K.S. Stewart, and Vance Head arrived on the scene. Officer Evans forwarded the description of the suspect given by Mrs. Sumpter. Within minutes of when the crime had been reported, Officer Vance Head located plaintiff four or five blocks from the crime scene. Considering the late hour, the proximity of the

suspect to the crime scene, and the similarity of plaintiff's appearance to the description of the suspect provided by Mrs. Sumpter, I would find that there was sufficient evidence to support a finding of probable cause.

### b. Malice

Additionally, the plaintiff's malicious prosecution claim for punitive damages is deficient. In order to maintain an action for punitive damages, plaintiff must demonstrate actual malice. *Moore v. City of Creedmoor*, 120 N.C. App. 27, 43, 460 S.E.2d 899, 909 (1995), *appeal dismissed and disc. review granted*, 342 N.C. 658, 467 S.E.2d 718 (1996). Actual malice is defined as ill-will, spite, or desire for revenge. *Id.* As there is no showing of actual malice in this case, plaintiff's claim for punitive damages on the claim of malicious prosecution necessarily must fail.

### c. Immunities

Defendant Evans is also entitled to summary judgment regarding plaintiff's state claims against him in his individual capacity on the basis of official immunity. The majority correctly states that to maintain a suit against a public official in his/her individual capacity, plaintiff must demonstrate that the official's actions were malicious, corrupt, or outside the scope of his/her official duties. Epps v. Duke Univ., *Inc.*, 122 N.C. App. 198, 211, 468 S.E.2d 846, 851 (1996). In his complaint, plaintiff alleges that Evans' actions "were grossly and wantonly negligent, or intentional." "An act is wanton when it is done of wicked purpose, or when it is done needlessly, manifesting a reckless indifference to the rights of others." *Marlowe v. Piner*, 119 N.C. App. 125, 128, 458 S.E.2d 220, 223 (1995).

In the present case, plaintiff alleges that defendant Evans prosecuted and imprisoned him without probable cause. A similar argument was made by the plaintiffs in *Marlowe v. Piner*, 119 N.C. App. 125, 128, 458 S.E.2d 220, 223 (1995). In *Marlowe*, the plaintiffs brought an action against defendant Piner, individually and in his official capacity as sheriff, for false arrest and false imprisonment. *Id.* at 126-27, 458 S.E.2d at 221-22. Although the plaintiffs alleged that defendant's actions were malicious in that the defendant arrested plaintiffs without probable cause, the trial court granted the defendant's motion for summary judgment based on official immunity. *Id.* at 128, 458 S.E.2d at 223. This Court affirmed the trial court's decision stating:

MOORE v. EVANS

[124 N.C. App. 35 (1996)]

> Plaintiffs have made no forecast of evidence which would tend to show that defendant intended his actions to be prejudicial or injurious to them. At most, plaintiffs' evidence tends to show that defendant *negligently* believed he had probable cause to arrest plaintiffs.

*Id.* Similarly, based on plaintiff's forecast of the evidence, I would reverse the trial court's decision denying defendants' motion for summary judgment with respect to plaintiff's state claims against defendant City and defendant Evans in his official and individual capacity.

## II. Federal Constitutional Claims

I also disagree with the majority's holding that defendant Evans was not entitled to qualified immunity regarding plaintiff's federal constitutional claims. In determining whether a defendant is entitled to qualified immunity, the plaintiff's right must be established so clearly that a reasonable official would know that his action violates that right. *Anderson v. Creighton*, 483 U.S. 635, 640, 97 L. Ed. 2d 523, 531 (1987). While the majority correctly states the test for determining whether a defendant is entitled to qualified immunity, I disagree with their application in the present case.

The United States Supreme Court established that "[g]overnment officials performing discretionary functions are shielded from civil liability to the extent their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Slattery v. Rizzo*, 939 F.2d 213, 216 (4th Cir. 1991) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818, 73 L. Ed. 2d 396, 410 (1982)). Accordingly, qualified immunity is intended to remove most cases from the legal process prior to submission to the jury except in cases where the official clearly violated the law. *Id.* The purpose of qualified immunity is to allow officials to perform their duties without the fear of impending lawsuits. "[P]ermitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." *Anderson v. Creighton*, 483 U.S. 635, 638, 97 L. Ed. 2d 523, 530 (1987).

Qualified immunity is particularly appropriate for police officers who must make quick decisions in an atmosphere of great uncertainty. As the United States Court of Appeals for the Fourth Circuit

noted, "[h]olding police officers liable in hindsight for every injurious consequence of their actions would paralyze the functions of law enforcement." *Pinder v. Johnson*, 54 F.3d 1169, 1173 (4th Cir.), *cert. denied*, —— U.S. ——, 133 L. Ed. 2d 436 (1995). Furthermore,

> [i]f every mistaken seizure were to subject police officers to personal liability under § 1983, those same officers would come to realize that the safe and cautious course was always to take no action. The purposes of immunity are not served by a police force intent on escaping liability to the cumulative detriment of those duties which communities depend upon such officers to perform.

*Gooden v. Howard County*, 954 F.2d 960, 967 (4th Cir. 1992).

Plaintiff contends that defendant Evans violated his Fourth Amendment right to be free from unwarranted searches and seizures. Having concluded that there was sufficient evidence for probable cause, I cannot say that Evans' conduct in arresting plaintiff violated his rights under the Fourth Amendment.

Even if Evans wrongly believed that there was probable cause to arrest defendant, he would be entitled to qualified immunity. As the Fourth Circuit explained:

> The "meaning" of the fourth amendment, at least when stated in broad philosophical terms, is relatively clear. The precise action or combination of actions, however, which will infringe a particular suspect's fourth amendment rights is often difficult for even the constitutional scholar to discern. . . . [T]here is often a "legitimate question" whether an officer's particular conduct constituted an improper search or seizure. When such a "legitimate question" exists, the principle of qualified immunity gives police officers the necessary latitude to pursue their investigations without having to anticipate, on the pain of civil liability, future refinements or clarifications of constitutional law.

*Tarantino v. Baker*, 825 F.2d 772, 775 (4th Cir. 1987) (citation omitted). Accordingly, I would hold that defendant Evans is entitled to qualified immunity as to this claim.

Plaintiff also argues that he had a clearly established right to be released from jail when John Erick Ellis confessed to the commission of the crime. The existence of an additional suspect, albeit one who confesses, does not automatically negate probable cause for plaintiff's arrest and detention. *See e.g., In re Moss*, 295 S.E.2d 33, 39

(W.Va. 1982) (holding that evidence showing that another individual confessed to the crime and was charged does not dictate a finding of no probable cause).

Finally, plaintiff alleges that defendant Evans violated 42 U.S.C. § 1983 by depriving him of "life, liberty, or property without due process of law," in violation of the Fourteenth Amendment. To successfully assert a 1983 claim in violation of the Fourteenth Amendment, a plaintiff "must assert facts that, at a minimum, demonstrate [d]efendants acted with deliberate or reckless intent." *Romero v. Fay*, 45 F.3d 1472, 1478 (10th Cir. 1995).

Here, the plaintiff alleged that defendant Evans acted with deliberate and reckless intent when conducting his post-arrest investigation. The issue of whether an officer's post-arrest investigation rises to the level of deliberate or reckless intent has been addressed by the United States Court of Appeals for the Fifth Circuit in *Simmons v. McElveen*, 846 F.2d 337 (5th Cir. 1988). In *Simmons*, plaintiff filed a § 1983 action against police officers alleging that their post-arrest investigation violated his constitutional rights. Following plaintiff's arrest for armed robbery, the police failed to disclose exculpatory fingerprint evidence to the district attorney's office and failed to conduct a physical line-up and fingerprint comparison of another suspect who was implicated by a "crime stoppers" program tip. *Id.* at 338. Eight months after the arrest, defendant was released after his attorney located a witness who exonerated and conclusively implicated the "crime stoppers" suspect. *Id.* at 338-39. The Fifth Circuit affirmed the trial court's decision to award summary judgment to the defendant officers holding that the officers' conduct "simply [did] not exceed the level of negligence." *Id.* at 339.

Similarly, in *Romero v. Fay*, 45 F.3d 1472 (10th Cir. 1995), the plaintiff brought a § 1983 action against police alleging that their post-arrest investigation violated his constitutional rights. In *Romero*, plaintiff was arrested for the murder of David Douglas and was imprisoned for approximately three months before he was released from jail. *Id.* at 1474. Following his arrest, the police failed to contact plaintiff's alibi witnesses and failed to interview individuals who allegedly saw another man threaten and attempt to fight David Douglas approximately two hours before he was murdered. *Id.* at 1479. The Tenth Circuit held that the plaintiffs failed to allege conduct which amounted to a constitutional violation. *Id.* at 1478. The Court reversed the district court's decision denying defendants' qualified

immunity upon concluding that defendants' conduct did not exceed negligence even though in hindsight investigation of plaintiff's alibi witnesses and other individuals would have been fruitful. *Id.* at 1479.

In sum, while I do not condone the post-arrest investigation performed by defendant Evans, plaintiff has failed to allege that defendant acted with "deliberate or reckless intent" and he is therefore entitled to qualified immunity. Accordingly, I would reverse the trial court's decision and remand this case for an entry of summary judgment in favor of all defendants.