IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-591

No. COA19-1171

Filed 2 November 2021

Mecklenburg County No. 15 CRS 245691-92

STATE OF NORTH CAROLINA

v.

HALO GARRETT, Defendant.

Appeal by the State from order entered 19 September 2019 by Judge Donnie

Hoover in Mecklenburg County Superior Court. Heard in the Court of Appeals 9

September 2020.

*Attorney General Joshua H. Stein, by Assistant Attorney General Kimberly N. Callahan, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender David W. Andrews, for defendant-appellee.*

MURPHY, Judge.

¶ 1        On a motion to dismiss pursuant to N.C.G.S. § 15A-954(a)(4), a defendant

bears the burden of showing his constitutional rights were flagrantly violated,

causing irreparable prejudice to the preparation of his case that can only be remedied

by dismissal of the prosecution. Here, Defendant cannot show that he experienced

any flagrant violation of his constitutional rights, and as such he was not irreparably

prejudiced. We reverse the trial court's order dismissing Defendant's charges and

remand to the trial court.

## **BACKGROUND**

Defendant Halo Garrett was born on 24 September 1999. On 13 December 2015, Defendant, at sixteen years old, allegedly broke into a home and stole several items.

On 24 October 2016, Defendant was charged in Mecklenburg County Superior Court as an adult pursuant to the then effective version of N.C.G.S. § 7B-1604(a) with felonious breaking or entering and larceny after breaking or entering, both Class H felonies. *See* N.C.G.S. § 7B-1604(a) (2015) ("Any juvenile, including a juvenile who is under the jurisdiction of the court, who commits a criminal offense on or after the juvenile's sixteenth birthday is subject to prosecution as an adult."). In 2017, after Defendant was charged, the General Assembly passed the Juvenile Justice Reinvestment Act, which changed how and when a juvenile could be prosecuted as an adult in Superior Court.[1] *See* 2017 S.L. 57 § 16D.4(c)-(e). The Juvenile Justice

---

[1] Most relevant to the facts of this case, the Juvenile Justice Reinvestment Act changed how sixteen-year-old and seventeen-year-old juveniles charged with Class H and Class I felonies could be prosecuted. *Compare* N.C.G.S. § 7B-1604(a) (2015), *with* N.C.G.S. § 7B-2200.5(b) (2019). Prior to the enactment of the Juvenile Justice Reinvestment Act, any juvenile who was sixteen or older when committing an alleged criminal offense was automatically prosecuted as an adult. *See* N.C.G.S. § 7B-1604(a) (2015) ("Any juvenile, including a juvenile who is under the jurisdiction of the court, who commits a criminal offense on or after the juvenile's sixteenth birthday is subject to prosecution as an adult."). After the enactment of the Juvenile Justice Reinvestment Act, the same juveniles are under the jurisdiction of Juvenile Court, and an assessment must be made prior to transferring

Reinvestment Act became effective on 1 December 2019 and does not apply retroactively. *See* 2017 S.L. 57 § 16D.4(tt). Had Defendant's offense date for the same Class H felonies occurred after 1 December 2019, Defendant would have initially been within the jurisdiction of the Juvenile Court[2] and an assessment would have been made to determine if he should be sentenced as an adult in Superior Court. *See* N.C.G.S. §§ 7B-2200.5(b); 7B-2203 (2019). Pursuant to the law at the time of his alleged offense in 2015, Defendant must be tried and potentially sentenced as an adult in Superior Court. *See* N.C.G.S. § 7B-1604(a) (2015).

¶ 4      The case was set for trial in late 2017, but Defendant failed to appear for trial on that date. Due to Defendant's failure to appear, he was arrested in 2019 and his case proceeded towards trial. At a pretrial hearing, Defendant was heard on a *Motion to Dismiss* pursuant to N.C.G.S. § 15A-954(a)(4), alleging flagrant violations of his constitutional rights to equal protection, due process, and protection from cruel and unusual punishment under the United States Constitution and the North Carolina Constitution as a result of being prosecuted as an adult in Superior Court.

---

jurisdiction to Superior Court. *See* N.C.G.S. § 7B-2200.5(b) (2019) ("If the juvenile was 16 years of age or older at the time the juvenile allegedly committed an offense that would be a Class H or I felony if committed by an adult, after notice, hearing, and a finding of probable cause, the court may, upon motion of the prosecutor or the juvenile's attorney or upon its own motion, transfer jurisdiction over a juvenile to [S]uperior [C]ourt pursuant to [N.C.G.S. §] 7B-2203."). N.C.G.S. § 7B-2203(b) includes eight factors for the Juvenile Court to consider in determining "whether the protection of the public and the needs of the juvenile will be served by transfer of the case to [S]uperior [C]ourt[.]" *See* N.C.G.S. § 7B-2203(b) (2019).

[2] For ease of reading, we refer to the District Court as "Juvenile Court."

After analyzing the constitutionality of Defendant's prosecution as an adult for crimes he allegedly committed while sixteen years old, the trial court granted Defendant's *Motion to Dismiss* and memorialized its ruling in its *Order Granting Defendant's Motion to Dismiss* ("Order"). The Order included the following "findings of fact":

> 1. Halo Garrett, hereinafter Defendant, is charged with Breaking and/or Entering and Larceny after Breaking and/or Entering in 15CRS245691 and 15CRS245692.
>
> 2. Breaking and/or Entering is a class H felony and Larceny after Breaking and/or Entering is a class H felony.
>
> 3. The State alleges that on [13 December 2015], Defendant broke into the apartment of [the alleged victim] and stole items from within.
>
> 4. Defendant was born on [24 September 1999] and was sixteen at the time of this alleged offense.
>
> 5. Defendant's cases were originally scheduled for trial during the fall of 2017, but Defendant failed to appear for calendar call. The State called the case for trial on [14 August 2019], after Defendant had been arrested on the Order for Arrest from the missed court date.
>
> 6. North Carolina is currently the last state in the country to automatically prosecute sixteen- and seventeen- year-olds as adults.
>
> 7. In 2017, the Juvenile Justice Reinvestment Act passed with bipartisan support. In N.C.G.S. [§] 7B-1601, The Juvenile Justice Reinvestment Act increased the age of [J]uvenile [C]ourt jurisdiction to eighteen effective [1 December 2019]. For class H and I felonies committed by sixteen-year-olds, the court must affirmatively find after

hearing that "the protection of the public and the needs of the juvenile will be served by transfer to [S]uperior [C]ourt;" otherwise the [J]uvenile [C]ourt retains exclusive jurisdiction.

8. Despite Defendant's age at the time of the alleged offense, he is not eligible for [J]uvenile [C]ourt under N.C.G.S. [§] 7B-1601 because the law does not go into effect until [1 December 2019].

9. In juvenile transfer hearings, the court must consider eight factors in determining whether a case should remain in [J]uvenile [C]ourt or be transferred to adult court. Those eight factors are the age of the juvenile, the maturity of the juvenile, the intellectual functioning of the juvenile, the prior record of the juvenile, prior attempts to rehabilitate the juvenile, facilities or programs available to the court prior to the expiration of the court's jurisdiction and the potential benefit to the juvenile of treatment or rehabilitation, the manner in which the offense was committed, and the seriousness of the offense and protection of the public.

10. In a 2015 report issued by the North Carolina Commission on the Administration of Law, the Commission compared adult and juvenile criminal proceedings. Juveniles prosecuted in adult court face detention in jail and the heightened risk of sexual violence posed to youthful inmates, no requirement of parental notice or involvement, active time in adult prison, risk of physical violence, public records of arrest, prosecution and conviction, and collateral consequences imposed by a conviction. Juvenile [C]ourt, on the other hand, requires an evaluation of a complaint that includes interviews with juveniles and parents, mandatory parental involvement, individualized consequences, treatment, training and rehabilitation, monthly progress meetings, and a confidential record of delinquency proceedings.

11. Defendant alleged that his constitutional rights have

been flagrantly violated and that there is such irreparable prejudice to Defendant's preparation of his case that there is no remedy but to dismiss the prosecution under N.C.G.S. [§] 15A-954(a)(4).

12. Defendant alleged three grounds under which his constitutional rights have been violated. Each ground would be sufficient for dismissal under N.C.G.S. [§] 15A-954(a)(4). The three grounds are cruel and unusual punishment under the [Eighth] Amendment, violation of Defendant's due process rights, and a violation of Defendant's equal protection rights. Defendant asserted his rights under the corresponding provisions of the North Carolina Constitution as stated in his Motion.

13. Defendant alleged that his [Eighth] Amendment rights have been violated in that his prosecution in adult court for an offense allegedly committed when he was sixteen constitutes cruel and unusual punishment.

14. The [Eighth] Amendment draws its meaning from the evolving standards of decency that mark the progress of a maturing society.

15. The [United States] Supreme Court has addressed the treatment of juveniles in the criminal justice system in a recent line of cases.

16. In its analysis in this line of cases, the Court looked to the consensus of legislative action in states around the country because consistency in the direction of change is powerful evidence of evolving standards of decency.

17. Every state in the country to have addressed the age of juvenile prosecution has raised the age, not lowered it or left it the same.

18. The Supreme Court held in *Roper v. Simmons*, 543 U.S. 551 (2005) that American society views juveniles as categorically less culpable than adult offenders due to their

lack of maturity and underdeveloped sense of responsibility, vulnerability to negative influences and outside pressures, and malleable character.

19. In *Roper*, the Court held that in regard to juveniles, the death penalty did not serve its intended aims of deterrence or retribution.

20. In *Graham v. Florida*, 560 U.S. 48 (2010), the Court held that juveniles convicted of non-homicidal offenses should not be sentenced to life without parole.

21. In *Miller v. Alabama*, 567 U.S. 460 (2012), the Supreme Court held that sentencing juvenile defendants to mandatory life in prison without parole violated the [Eighth] Amendment.

22. In *Montgomery v. Louisiana*, 577 U.S. ___ (2016), the Supreme Court held that *Miller* applied retroactively to defendants sentenced to life without parole prior to 2012 and that hearings could be conducted in these cases to consider eligibility for parole status.

23. The [caselaw] discussed in the Report and in the cases cited heavily on scientific research. The scientific research indicates that the development of neurobiological systems in the adolescent brain cause teens to engage in greater risk-taking behavior; that teenage brains are not mature enough to adequately govern self-regulation and impulse control; that teens are more susceptible to peer influence than adults; that teens have a lesser capacity to assess long-term consequences; that as teens mature, they become more able to think to the future; and that teens are less responsive to the threat of criminal sanctions.

24. Defendant alleges that his due process rights have been violated in that he has been automatically prosecuted in adult criminal court without a hearing and findings in support of transfer.

25. As of [1 December 2019], North Carolina will no longer permit a sixteen-year-old charged with class H felonies to be automatically prosecuted, tried and sentenced as an adult.

26. In *Kent v. United States*, 383 U.S. 541 (1966), the Supreme Court held that the process of transferring a juvenile to adult court is one with such tremendous consequences that it should require attendant ceremony such as a hearing, assistance of counsel, and a statement of reasons.

27. Defendant alleges that his right to equal protection under the Constitution has been violated.

28. The Equal Protection clause of the Constitution protects against disparity in treatment by a State between classes of individuals with largely indistinguishable circumstances.

29. Legislation is presumed valid and will be sustained if classification is rationally related to a legitimate state interest.

30. A criminal statute is invalid under the NC Constitution if it provides different punishment for the same acts committed under the same circumstances by persons in like situations.

31. There is no rational basis for distinguishing between automatic prosecution and punishment of Defendant in adult court now and punishment of a sixteen-year-old after [1 December 2019].

32. Each of the constitutional violations raised by Defendant and found by the [trial court] have caused irreparable prejudice to Defendant in that the State has denied Defendant the age-appropriate procedures of [J]uvenile [C]ourt and, correspondingly, exposed him to the more punitive direct and collateral consequences of adult

court.

¶ 6     The Order included the following "conclusions of law":

> 1. The holding in *State v. Wilkerson*, [232 N.C. App. 482, 753 S.E.2d 829] (2014), is not controlling and the underlying rationale is not applicable to the case at bar.
>
> 2. That Defendant is not covered by the [Juvenile Justice Reinvestment Act] in North Carolina; however, based upon the same reasoning that went into the [Juvenile Justice Reinvestment Act], "evolving standards of decency," and the reasoning contained in the cases cited by [] Defendant, that his prosecution in adult court violates his rights.
>
> 3. By his being prosecuted as an adult in this case, Defendant's [Eighth] Amendment right against cruel and unusual punishment is being violated.
>
> 4. By his being prosecuted as an adult in this case, Defendant's right to due process is being violated.
>
> 5. By his being prosecuted as an adult in this case, Defendant's right to equal protection under the laws is being violated.
>
> 6. Once an equal protection violation has been established, the burden shifts to the State to demonstrate an inability to remedy the violation in a timely fashion.
>
> 7. The State did not meet its burden in this case.
>
> 8. As a result of the continuing attempts to prosecute [] Defendant as an adult in these cases, Defendant's constitutional rights have been flagrantly violated and there is such irreparable prejudice to [] Defendant's preparation of his case that there is no remedy but to dismiss the prosecution pursuant to N.C.G.S. [§] 15A-954.
>
> 9. Defendant is being deprived of his right to be treated as a juvenile, which he was at the time he allegedly committed

these crimes, with all of the attendant benefits granted to juveniles to reform their lives.

10. That Assistant District Attorney, on behalf of the State, has had an opportunity to review these FINDINGS OF FACT[], CONCLUSIONS OF LAW AND ORDER.

¶ 7    In the Order, the trial court concluded Defendant's constitutional rights to equal protection, protection from cruel and unusual punishment, and due process were violated by the prosecution of Defendant as an adult.  The trial court went on to conclude the loss of the benefits of Juvenile Court irreparably prejudiced the preparation of his case such that dismissal was the only remedy.  The State timely appealed in accordance with N.C.G.S. § 15A-1445(a)(1).  *See* N.C.G.S. § 15A-1445(a)(1) (2019) (permitting the State to appeal from the Superior Court to the appellate division when "there has been a decision or judgment dismissing criminal charges as to one or more counts").

## ANALYSIS

¶ 8    On appeal, the State challenges the trial court's grant of Defendant's *Motion to Dismiss* pursuant to N.C.G.S. § 15A-954(a)(4), contending there were no flagrant violations of Defendant's constitutional rights and no irreparable prejudice to the preparation of his case requiring dismissal.  The State challenges Findings of Fact 14-31 and Conclusions of Law 3-9.  Some of these challenged findings of fact may be erroneous, or more properly characterized as conclusions of law.  However, for the purposes of our analysis we assume, without deciding, that all findings of fact

properly characterized as such were supported by competent evidence. Additionally, we treat any findings of fact that are more properly characterized as conclusions of law as such, rather than as binding findings of fact. *See State v. Campola*, 258 N.C. App. 292, 298, 812 S.E.2d 681, 687 (2018) ("If the trial court labels as a finding of fact what is in substance a conclusion of law, we review that 'finding' *de novo*.").[3] We reverse the Order as Defendant's constitutional rights were not violated, let alone flagrantly violated.

¶ 9          Defendant's *Motion to Dismiss* was made pursuant to N.C.G.S. § 15A-954(a)(4), which reads:

> (a) The court on motion of the defendant must dismiss the charges stated in a criminal pleading if it determines that:
>
>  . . . .
>
> (4) The defendant's constitutional rights have been flagrantly violated and there is such irreparable prejudice to the defendant's preparation of his case that there is no remedy but to dismiss the prosecution.

N.C.G.S. § 15A-954(a)(4) (2019). "As the movant, [D]efendant bears the burden of showing the flagrant constitutional violation and of showing irreparable prejudice to the preparation of his case. This statutory provision 'contemplates drastic relief,'

---

[3] While other findings of fact in the Order may be properly characterized as conclusions of law, we specifically note that Finding of Fact 31 is more properly characterized as a conclusion of law. *See In re Helms*, 127 N.C. App. 505, 510, 491 S.E.2d 672, 675 (1997) (citations omitted) (holding "any determination requiring the exercise of judgment or the application of legal principles is more properly classified a conclusion of law").

such that 'a motion to dismiss under its terms should be granted sparingly.'" *State v. Williams*, 362 N.C. 628, 634, 669 S.E.2d 290, 295 (2008) (quoting *State v. Joyner*, 295 N.C. 55, 59, 243 S.E.2d 367, 370 (1978)).

¶ 10        In reviewing motions to dismiss made pursuant to N.C.G.S. § 15A-954(a)(4), our Supreme Court has applied the following relevant principles:

> The decision that [a] defendant has met the statutory requirements of N.C.G.S. § 15A-954(a)(4) and is entitled to a dismissal of the charge against him is a conclusion of law. Conclusions of law drawn by the trial court from its findings of fact are reviewable *de novo* on appeal. Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal.

*Williams*, 362 N.C. at 632-33, 669 S.E.2d at 294 (marks and citations omitted).

¶ 11        In terms of flagrant constitutional violations, the trial court concluded:

> 3. By his being prosecuted as an adult in this case, Defendant's [Eighth] Amendment right against cruel and unusual punishment is being violated.
>
> 4. By his being prosecuted as an adult in this case, Defendant's right to due process is being violated.
>
> 5. By his being prosecuted as an adult in this case, Defendant's right to equal protection under the laws is being violated.

The trial court specifically found that "[e]ach of the constitutional violations raised by Defendant and found by the [trial court] have caused irreparable prejudice to Defendant in that the State has denied Defendant the age-appropriate procedures of

[J]uvenile [C]ourt and, correspondingly, exposed him to the more punitive direct and collateral consequences of adult court." As a result, each of the constitutional violations independently supported the trial court's ruling, and each constitutional violation must be addressed.

## A. Equal Protection

¶ 12      Here, the trial court found an equal protection violation based on the lack of a rational basis for treating sixteen-year-old juveniles differently depending on the date of the alleged Class H felony. Sixteen-year-old juveniles alleged to have committed a Class H felony before the effective date of the Juvenile Justice Reinvestment Act, like Defendant, are automatically prosecuted as adults in Superior Court; whereas, sixteen-year-old juveniles alleged to have committed a Class H felony after the effective date of the Juvenile Justice Reinvestment Act are initially prosecuted in Juvenile Court, and then a determination is made as to whether the juvenile should be prosecuted as an adult in Superior Court.

¶ 13      "[T]he Fourteenth Amendment does not forbid statutes and statutory changes to have a beginning, and thus to discriminate between the rights of an earlier and later time." *Sperry & Hutchinson Co. v. Rhodes*, 220 U.S. 502, 505, 55 L. Ed. 561, 563 (1911).

¶ 14      The basis of the alleged equal protection violation here is unpersuasive. In *State v. Howren*, our Supreme Court addressed a claimed equal protection violation

based on "the fact that after 1 January 1985 an individual charged with driving while impaired must [have been] given two chemical breath analyses[,]" whereas at the time of the appeal "only one analysis [was] required, and [the] defendant was only given one breathalyzer test." *State v. Howren,* 312 N.C. 454, 457, 323 S.E.2d 335, 337 (1984). Our Supreme Court held:

> A statute is not subject to the [E]qual [P]rotection [C]lause of the [F]ourteenth [A]mendment of the United States Constitution or [A]rticle I § 19 of the North Carolina Constitution unless it creates a classification between different groups of people. In this case no classification between different groups has been created. All individuals charged with driving while impaired before 1 January 1985 will be treated in exactly the same way as will all individuals charged after 1 January 1985. The statute merely treats the same group of people in different ways at different times. It is applied uniformly to all members of the public and does not discriminate against any group. If [the] defendant's argument were accepted the State would never be able to create new safeguards against error in criminal prosecutions without invalidating prosecutions conducted under prior less protective laws. Article I § 19 and the [E]qual [P]rotection [C]lause do not require such an absurd result.

*Id*. at 457-58, 323 S.E.2d at 337-38.

¶ 15        Defendant's claimed equal protection violation here is based on the same principle as the claimed equal protection violation our Supreme Court rejected in *Howren*—that treating the same group of people differently at different times constitutes an equal protection violation. Defendant's equal protection rights were

not violated where no classification was created between different groups of people, and we reverse the Order as to the equal protection violation.

## B. Cruel and Unusual Punishment

¶ 16     Here, the trial court concluded "[b]y his being prosecuted as an adult in this case, Defendant's [Eighth] Amendment right against cruel and unusual punishment is being violated." Defendant's *Motion to Dismiss* contended his right to be protected from cruel and/or unusual punishment was violated under the North Carolina Constitution and the United States Constitution and stated "our Court 'historically has analyzed cruel and/or unusual punishment claims by criminal defendants the same under both the [F]ederal and [S]tate Constitutions.'" In a footnote in his *Motion to Dismiss*, Defendant contended "North Carolina's 'cruel or unusual' clause is broader than the federal 'cruel and unusual' one[,]" but then stated "[Defendant] is entitled to relief under the narrower 'cruel and unusual' punishment formulation and will focus his arguments there."

¶ 17     We have held:

> Article I, Section 27 of the North Carolina Constitution prohibits the infliction of "cruel *or* unusual punishments." N.C. Const. art. I, § 27. The wording of this provision differs from the language of the Eighth Amendment, which prohibits the infliction of "cruel *and* unusual punishments." U.S. Const. amend. VIII.
>
> Despite this difference in the wording of the two provisions, however, our Supreme Court historically has analyzed

> cruel and/or unusual punishment claims by criminal defendants the same under both the [F]ederal and [S]tate Constitutions. Thus, because we have determined that [the] [d]efendant's sentence does not violate the Eighth Amendment, we likewise conclude it passes muster under Article I, Section 27 of the North Carolina Constitution.

*State v. Seam*, 263 N.C. App. 355, 365, 823 S.E.2d 605, 612 (2018) (marks and citations omitted), *aff'd per curiam*, 373 N.C. 529, 837 S.E.2d 870 (2020). Accordingly, we only analyze this issue under the United States Constitution as it applies with equal force to the North Carolina Constitution.

¶ 18        As an initial matter, the State argues the trial court should not have applied the Eighth Amendment to the present case because Defendant had not been punished at the time of the motion.

> Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions. Thus, in *Trop v. Dulles*, [356 U.S. 86, 2 L. Ed. 2d 630] (1958), the plurality appropriately took the view that denationalization was an impermissible punishment for wartime desertion under the Eighth Amendment, because desertion already had been established at a criminal trial. But in *Kennedy v. Mendoza-Martinez*, [372 U.S. 144, 9 L. Ed. 2d 44] (1963), where the Court considered denationalization as a punishment for evading the draft, the Court refused to reach the Eighth Amendment issue, holding instead that the punishment could be imposed only through the criminal process. As these cases demonstrate, *the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law*. Where the State seeks to impose

> punishment without such an adjudication, the pertinent
> constitutional guarantee is the Due Process Clause of the
> Fourteenth Amendment.

*Ingraham v. Wright,* 430 U.S. 651, 671 n.40, 51 L. Ed. 2d 711, 730 n.40 (1977)

(emphasis added) (citations omitted); *see also Moore v. Evans*, 124 N.C. App. 35, 51,

476 S.E.2d 415, 426-27 (1996) (citation omitted) ("In a related argument, [the

plaintiff] further contends that [the] defendants violated his Eighth Amendment

right to be free from cruel and unusual punishment. The United States Supreme

Court stated in *Ingraham v. Wright*, 'An examination of the history of the [Eighth]

Amendment and the decisions of this Court construing the proscription against cruel

and unusual punishment confirms that it was designed to protect those convicted of

crimes.' Therefore, we find that the Eighth Amendment is inapplicable to the present

case, as [the plaintiff] was never formally adjudicated guilty of any crime.").

Defendant contends, however, that being automatically tried as an adult is

covered by the Eighth Amendment, which in part "imposes substantive limits on

what can be made criminal and punished as such[.]" *See Ingraham,* 430 U.S. at 667,

51 L. Ed. 2d at 728. *Ingraham* stated:

> [T]he Cruel and Unusual Punishments Clause
> circumscribes the criminal process in three ways: First, it
> limits the kinds of punishment that can be imposed on
> those convicted of crimes; second, it proscribes punishment
> grossly disproportionate to the severity of the crime; and
> *third, it imposes substantive limits on what can be made
> criminal and punished as such.* We have recognized the

> last limitation as one to be applied sparingly.  The primary
> purpose of the Cruel and Unusual Punishments Clause has
> always been considered, and properly so, to be directed at
> the method or kind of punishment imposed for the violation
> of criminal statutes.

*Id.* at 667, 51 L. Ed. 2d at 727-28 (citations and marks omitted) (emphasis added).

The United States Supreme Court then referred to *Robinson v. California* as an

example of the third category.  *Id.* at 667, 51 L. Ed. 2d at 728 (citing *Robinson v.*

*California*, 370 U.S. 660, 8 L. Ed. 2d 758 (1962)).

¶ 20        In *Robinson,* the United State Supreme Court held that a statute, making the

illness of being addicted to narcotics a criminal offense, violated the Eighth

Amendment, reasoning:

> This statute, therefore, is not one which punishes a person
> for the use of narcotics, for their purchase, sale or
> possession, or for antisocial or disorderly behavior
> resulting from their administration.  It is not a law which
> even purports to provide or require medical treatment.
> Rather, we deal with a statute which makes the "status" of
> narcotic addiction a criminal offense, for which the offender
> may be prosecuted "at any time before he reforms."
> California has said that a person can be continuously guilty
> of this offense, whether or not he has ever used or
> possessed any narcotics within the State, and whether or
> not he has been guilty of any antisocial behavior there.
>
> It is unlikely that any State at this moment in history
> would attempt to make it a criminal offense for a person to
> be mentally ill, or a leper, or to be afflicted with a venereal
> disease.  A State might determine that the general health
> and welfare require that the victims of these and other
> human afflictions be dealt with by compulsory treatment,

involving quarantine, confinement, or sequestration. But, in the light of contemporary human knowledge, a law which made a criminal offense of such a disease would doubtless be universally thought to be an infliction of cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments.

We cannot but consider the statute before us as of the same category. In this Court counsel for the State recognized that narcotic addiction is an illness. Indeed, it is apparently an illness which may be contracted innocently or involuntarily. We hold that a state law which imprisons a person thus afflicted as a criminal, even though he has never touched any narcotic drug within the State or been guilty of any irregular behavior there, inflicts a cruel and unusual punishment in violation of the Fourteenth Amendment. To be sure, imprisonment for ninety days is not, in the abstract, a punishment which is either cruel or unusual. But the question cannot be considered in the abstract. Even one day in prison would be a cruel and unusual punishment for the "crime" of having a common cold.

*Robinson*, 370 U.S. at 666-67, 8 L. Ed. 2d at 762-63 (citation and footnotes omitted).

We do not identify Defendant being tried as an adult, pursuant to N.C.G.S. § 7B-1604(a) (2015), to be of the same character as a person's illness being criminalized, and it does not trigger the Eighth Amendment's "[imposition of] substantive limits on what can be made criminal and punished as such[.]" *Ingraham,* 430 U.S. at 667, 51 L. Ed. 2d at 728. As an initial matter, our research has not revealed any North Carolina or United State Supreme Court decision applying the above principle from *Robinson* outside of the status of addiction to drugs or alcohol. *See, e.g., Powell v.*

*Texas*, 392 U.S. 514, 532, 20 L. Ed. 2d 1254, 1267 (holding a conviction for being drunk in public was not in the same category discussed in *Robinson*, as "[t]he State of Texas [] [did] not [seek] to punish a mere status, as California did in *Robinson*; nor [did] it attempt[] to regulate [the] appellant's behavior in the privacy of his own home. Rather, it has imposed upon [the] appellant a criminal sanction for public behavior which may create substantial health and safety hazards, both for [the] appellant and for members of the general public, and which offends the moral and esthetic sensibilities of a large segment of the community"), *reh'g denied*, 393 U.S. 898, 21 L. Ed. 2d 185 (1968). Further, the prosecution of juveniles as adults does not involve the substance of what is made criminal, and instead involves the procedure taken regarding a criminal offense alleged against juveniles. Here, the substance is properly criminally punished as Defendant was charged with felonious breaking and entering and larceny after breaking or entering, offenses that are undoubtedly within the police powers of North Carolina. The situation Defendant faces here cannot be said to be analogous to *Robinson* because his prosecution as an adult does not criminalize a status, but instead punishes criminal behavior by juveniles according to the procedures in place at the time of the offense.

¶ 22    Defendant has no claim under the Eighth Amendment. Instead, to the extent Defendant claims the State punished him prior to a conviction, this claim properly

falls under due process.[4]   On this basis, we reverse the Order as to the cruel and unusual punishment violation.

## C. Due Process

¶ 23   Relying on *Kent v. United States*, 383 U.S. 541, 16 L. Ed. 2d 84 (1966), the trial court concluded Defendant's due process rights were violated because he was automatically prosecuted as an adult in this case "without a hearing and findings in support of transfer."   As it was unclear whether the trial court's conclusion included both procedural and substantive due process, we analyze both.

> Our courts have long held that the law of the land clause has the same meaning as due process of law under the Federal Constitution.   Due process provides two types of protection for individuals against improper governmental action.   Substantive due process protection prevents the government from engaging in conduct that shocks the conscience, or interferes with rights implicit in the concept of ordered liberty.   Procedural due process protection ensures that when government action depriving a person of life, liberty, or property survives substantive due process review, that action is implemented in a fair manner.
>
> Substantive due process is a guaranty against arbitrary legislation, demanding that the law shall not be unreasonable, arbitrary or capricious, and that the law be substantially related to the valid object sought to be obtained.   Thus, substantive due process may be characterized as a standard of reasonableness, and as such it is a limitation upon the exercise of the police power.
>
> The fundamental premise of procedural due process

---

[4] We note Defendant did not make an argument recognizing this distinction at the trial court or on appeal.

> protection is notice and the opportunity to be heard. Moreover, the opportunity to be heard must be at a meaningful time and in a meaningful manner.
>
> In order to determine whether a law violates substantive due process, we must first determine whether the right infringed upon is a fundamental right. If the right is constitutionally fundamental, then the court must apply a strict scrutiny analysis wherein the party seeking to apply the law must demonstrate that it serves a compelling state interest. If the right infringed upon is not fundamental in the constitutional sense, the party seeking to apply it need only meet the traditional test of establishing that the law is rationally related to a legitimate state interest.

*State v. Fowler*, 197 N.C. App. 1, 20-21, 676 S.E.2d 523, 540-41 (2009) (marks and citations omitted), *disc. rev. denied*, *appeal dismissed*, 364 N.C. 129, 696 S.E.2d 695 (2010). "The requirements of procedural due process apply only to the *deprivation* of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Johnston v. State*, 224 N.C. App. 282, 305, 735 S.E.2d 859, 875 (2012), *aff'd per curiam*, 367 N.C. 164, 749 S.E.2d 278 (2013). "Once a protected life, liberty, or property interest has been demonstrated, the Court must inquire further and determine exactly what procedure or 'process' is due." *State v. Stines*, 200 N.C. App. 193, 196, 683 S.E.2d 411, 413 (2009) (marks omitted).

Here, the trial court did not clearly find the existence of a fundamental right or a protected interest; however, it did cite *Kent v. United States* in its discussion of due process. *See Kent,* 383 U.S. at 544, 16 L. Ed. 2d at 88. To the extent that the

trial court concluded a fundamental right to or a protected interest in being prosecuted as a juvenile existed, it erred. Defendant does not present, and our research does not reveal, any case that holds there is a protected interest in, or fundamental right related to, being tried as a juvenile in criminal cases, as opposed to being tried as an adult. We decline to create such a right under the veil of the penumbra of due process.

¶ 25        Further, *Kent*, which the trial court and Defendant cite, is not controlling or instructive on the issues raised by Defendant. In *Kent,* a sixteen-year-old boy was charged with housebreaking, robbery, and rape. *Id*. at 543-44, 16 L. Ed. 2d at 87-88. At that time, according to the applicable statutes in Washington, D.C., the juvenile court had exclusive jurisdiction over the petitioner due to his age; however, the juvenile court could elect to waive jurisdiction and transfer jurisdiction to the district court after a full investigation. *Id*. at 547-48, 16 L. Ed. 2d at 90. After the petitioner's attorney filed a motion in opposition to the juvenile court's waiver of jurisdiction, the juvenile court, without ruling on the motion, holding a hearing, or conferring with the petitioner, entered an order transferring jurisdiction to the district court that contained no findings or reasoning. *Id*. at 545-46, 16 L. Ed. 2d at 88-89. The United States Supreme Court held:

> [The] petitioner–then a boy of 16–was *by statute* entitled to certain procedures and benefits as a consequence of his *statutory right* to the "exclusive" jurisdiction of the

[j]uvenile [c]ourt. In these circumstances, considering particularly that decision as to waiver of jurisdiction and transfer of the matter to the [d]istrict [c]ourt was potentially as important to [the] petitioner as the difference between five years' confinement and a death sentence, we conclude that, as a condition to a valid waiver order, [the] petitioner [was] entitled to a hearing, including access by his counsel to the social records and probation or similar reports which presumably are considered by the court, and to a statement of reasons for the [j]uvenile [c]ourt's decision. *We believe that this result is required by the statute read in the context of constitutional principles relating to due process* and the assistance of counsel.

*Id.* at 557, 16 L. Ed. 2d at 95 (emphases added).

¶ 26    Based on this language, in the context of the facts of *Kent*, we conclude *Kent* involved a completely distinct factual situation at the outset—there, the petitioner was statutorily entitled to begin his proceedings within the exclusive jurisdiction of the juvenile court; whereas, here, under N.C.G.S. § 7B-1604(a) (2015), Defendant's proceedings began in Superior Court. This statutory distinction is critical because the United States Supreme Court in *Kent* explicitly based its holding on due process's interaction with the requirements of the applicable statute. *Id.* Furthermore, it is clear *Kent* does not require a hearing and findings to support trying *any* juvenile as an adult; instead, *Kent* requires hearings and findings to support the *transfer* of a juvenile from juvenile court to adult court when that is the existing statutory scheme. *Id.* *Kent* did not create a fundamental constitutional right or constitutionally protected interest to a juvenile hearing or being tried as a juvenile. Furthermore, our

Supreme Court, in interpreting *Kent*, has stated:

> In *Kent*, the Supreme Court enunciated a list of factors for the Juvenile Court of the District of Columbia to consider in making transfer decisions. . . . [I]t is important to note that the Supreme Court *nowhere stated in Kent that the above factors were constitutionally required.* In appending this list of factors [to consider in making transfer determinations] to its opinion, *the Kent Court was merely exercising its supervisory role over the inferior court created by Congress for the District of Columbia.* Thus, the factors in the Appendix to *Kent* have no binding effect on this Court.

*State v. Green*, 348 N.C. 588, 600-01, 502 S.E.2d 819, 826-27 (1998) (emphases added), *cert. denied*, 525 U.S. 1111, 142 L. Ed. 2d 783 (1999), *superseded by statute on other ground as stated in In re J.L.W.*, 136 N.C. App. 596, 525 S.E.2d 500 (2000). Our Supreme Court's interpretation of *Kent* in *Green*, as not concerning constitutionally required factors for the transfer of juveniles from juvenile court to adult court, further supports our conclusion that *Kent* was not concerned with constitutional requirements. *Id.*

The trial court clearly considered *Kent* in concluding that Defendant's due process rights were violated. The only other finding of fact that the trial court used to support the conclusion of law related to due process stated "[a]s of [1 December 2019], North Carolina will no longer permit a sixteen-year-old charged with class H Felonies to be automatically prosecuted, tried and sentenced as an adult." This finding alone does not support concluding that Defendant's due process rights were

violated. Further, the Order does not otherwise conduct the required steps of a due process analysis, as there was no finding or conclusion that the statute impacted a fundamental right, implicating enhanced scrutiny under substantive due process, or deprived Defendant of "a protected life, liberty, or property interest[,]" implicating procedural due process protections. *Stines*, 200 N.C. App. at 196, 683 S.E.2d at 413.

There was not a protected interest at issue before the trial court and Defendant's procedural due process protections were not implicated. *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569, 33 L. Ed. 2d 548, 556 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."). Additionally, turning to substantive due process, as there is not a fundamental right at issue here, we apply the rational basis test. *See Fowler*, 197 N.C. App. at 21, 676 S.E.2d at 540-41. "The 'rational basis' standard merely requires that the governmental classification bear some rational relationship to a conceivable legitimate interest of government." *White v. Pate*, 308 N.C. 759, 766-67, 304 S.E.2d 199, 204 (1983).

> [U]nless legislation involves a suspect classification or impinges upon fundamental personal rights, the mere rationality standard applies and the law in question will be upheld if it has any conceivable rational basis. Moreover, the deference afforded to the government under the rational basis test is so deferential that a court can uphold the regulation if the court can *envision* some rational basis

for the classification.

*Clayton v. Branson*, 170 N.C. App. 438, 455, 613 S.E.2d 259, 271 (marks omitted), *disc. rev. denied*, 360 N.C. 174, 625 S.E.2d 785 (2005).

¶ 29    Here, there is a rational basis for the statute, despite the trial court's finding otherwise in Finding of Fact 31.[5]    North Carolina has a legitimate interest in promoting the permanency of a sentence, and also has a legitimate interest in updating statutes to reflect changing ideals of fairness.  *See Engle v. Isaac*, 456 U.S. 107, 127, 71 L. Ed. 2d 783, 800, *reh'g denied*, 456 U.S. 1001, 73 L. Ed. 2d 1296 (1982). The change the General Assembly made to increase the age at which a person is treated as a juvenile is rationally related to the State's legitimate interests in having statutes that reflect current ideals of fairness, as the statute directly effectuates the legitimate interest in having fair sentencing statutes.  The decision to prosecute and sentence juveniles under the statutory scheme in place at the time they commit their offense is rationally related to the State's legitimate interest in having clear criminal statutes that are enforced consistently with their contemporaneous statutory

---

[5] The State challenges Finding of Fact 31 in its brief.  Additionally, Finding of Fact 31 is more properly classified as a conclusion of law because it requires the application of legal principles.  *See In re Helms*, 127 N.C. App. at 510, 491 S.E.2d at 675 (citations omitted) (holding "any determination requiring the exercise of judgment or the application of legal principles is more properly classified a conclusion of law").  As a conclusion of law, we review whether there was a rational basis for this statute de novo.  *See Williams*, 362 N.C. at 632, 669 S.E.2d at 294 ("Conclusions of law drawn by the trial court from its findings of fact are reviewable *de novo* on appeal.").

scheme.[6] Prosecuting Defendant as an adult within the jurisdiction of the Superior Court was not a violation of substantive or procedural due process based simply upon the findings of fact regarding an impending change in how juveniles are prosecuted under the law and *Kent*, which held that a violation of due process occurred when a juvenile's statutory right to the juvenile court having exclusive jurisdiction was violated without any hearing, findings, or reasoning. To the extent the trial court relied on *Kent* and due process generally to support its conclusion that Defendant's due process rights were violated, the trial court erred and we reverse the Order to the extent that it is based on this perceived constitutional violation.

¶ 30    Defendant's constitutional rights were not violated, much less flagrantly so, as required for the grant of his *Motion to Dismiss* pursuant to N.C.G.S. § 15A-954(a)(4). As there were no flagrant violations of Defendant's constitutional rights, we need not address whether Defendant was irreparably prejudiced. We reverse the Order granting Defendant's *Motion to Dismiss* pursuant to N.C.G.S. § 15A-954(a)(4).

## CONCLUSION

¶ 31    The challenged and unchallenged findings of fact do not support concluding there was any violation of Defendant's constitutional rights to equal protection, to be

---

[6] Our appellate courts have consistently required this approach in the context of sentencing. *See, e.g., State v. Whitehead*, 365 N.C. 444, 447, 722 S.E.2d 492, 495 (2012) ("Trial courts are required to enter criminal judgments in compliance with the sentencing provisions in effect at the time of the offense.").

protected from cruel and unusual punishment, or to substantive or procedural due process. The trial court erred in granting Defendant's *Motion to Dismiss* under N.C.G.S. § 15A-954(a)(4).

REVERSED AND REMANDED.

Chief Judge STROUD and Judge COLLINS concur.